1                                    HONORABLE STANLEY A. BASTIAN

2    Shayne J. Sutherland, WSBA #44593
     CAMERON SUTHERLAND, PLLC
3    905 W. Riverside Ave., Ste. 404
     Spokane, WA 99201
4    Phone: 509-315-4507
     Email: ssutherland@cameronsutherland.com
5    *Attorney for Plaintiff*

6    Christopher M. Hogue, WSBA #48041
     HOGUE LAW FIRM
7    905 W. Riverside Ave., Ste. 402
     Spokane, 99201
8    Phone: 509-934-1998
     Email: chris@spokaneadvocate.com
9    *Attorney for Plaintiff*

10

                     IN THE UNITED STATES DISTRICT COURT
11                   EASTERN DISTRICT OF WASHINGTON

12   JENNIFER SCHULTZ, an individual, )
     on behalf of herself and all others  )   Case No.: 2:23-cv-00088-SAB
13   similarly situated,                            )
                                                           )   **PLAINTIFF'S MOTION FOR**
                    Plaintiff,                        )   **CLASS CERTIFICATION**
14                                                       )
             vs.                                          )   02/28/2024
15                                                       )   Without Oral Argument
     AVENUE5 RESIDENTIAL, LLC, a       )
16   foreign limited liability company,       )
                                                           )
                    Defendant.                      )
17   ─────────────────────────── )

18

19
     PLAINTIFF'S MOTION FOR CLASS
20   CERTIFICATION - 1

21

1

## TABLE OF CONTENTS

2    I. INTRODUCTION...................................................................7

3    II. FACTUAL BACKGROUND......................................................11

4    III.  AUTHORITY AND ARGUMENT.............................................15

5       A. The Fundamental Purposes Of Fed. R. Civ. P. 23 Are Well Served By
          Certifying This Proposed Class..................................................15
6
       B. Legal Standard For Class Certification.......................................17
7
       C. Class Certification is Appropriate Under Fed. R. Civ. P. 23..............18
8
          1. The Proposed Class Satisfies The Numerosity Requirement.........18
9
          2. The Class Presents Common Questions Of Law And Fact...........20
10
          3. Ms. Schultz's Claims Are Typical Of The Class......................22
11
          4. Ms. Schultz will Fairly And Adequate Protect The Interests Of The
12        Class....................................................................................24

13        5. Proposed Class Counsel Are Qualified To Litigate This Action......25

14        6. Predominance And Superiority Are Satisfied In This Matter.........26

15    IV. CONCLUSION...................................................................31

16

17

18

19
    PLAINTIFF'S MOTION FOR CLASS
20  CERTIFICATION - 2

21

1

## TABLE OF AUTHORITIES

2
**Cases**

3
*Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952 (9th Cir. 2013)………………..20

4
*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455
(2013)……………………………………………………………………………………..22

5

6
*Benitz v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL 309200 (E.D. Cal.
Jan. 21, 2020)……………………………………………………………………………..21

7
*Bias v. Wells Fargo & Co.*, 312 F.R.D. 528 (N.D. Cal. 2015)……………………..27

8
*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)…………………………….…17, 27

9
*Brown v. Brown,* 6 Wn. App. 249, 492 P.2d 581 (1971)……………………...15, 31

10
*Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020)…………………….26

11
*Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 415 P.3d 224
(2018)……………………………………………………………………………………..30

12

13
*Eisenberg v. Gagnon*, 766 F.2d 770 (3rd Cir. 1985)……….……………………..30

*Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill. App.3d 995, 574 N.E.2d 760 (Ill.
App. 1991)……………………………………………………………………………...15

14

15
*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)………………….20

16
*Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)……………...23

17
*Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193 (1981)……………..........15, 17

18
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)………………..20, 24, 28

19

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 3

20

21

1    *Hansberry v. Lee*, 311 U.S. 32 (1940)……………………………………24

2    *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)………18

3    *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015)……………......24

4    *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)……………....17

    *In re Washington Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658 (W.D.

5    Wash. 2011)……………………………………………………………………19

6    *Lewis v. Zanco*, 16 Wn. App. 2d 819, 483 P.3d 836 (2021)……………………....10

7    *Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir. 2013)…………………………..27

8    *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

    244 F.3d 1152 (9th Cir. 2001)……………………………………………………29

9    *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)…………......26

10

    *Nichols v. Geico Gen. Ins. Co.*, 2021 U.S. Dist. LEXIS 81565 (W.D. Wash. 2021)

11    ……………………………………………………………………………………27

12    *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)…………………………..17, 22, 23

13    *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965 (1985)…………15

14    *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 484 P.3d 1251 (2021)…………….16

15    *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp.2d 1324 (W.D. Wash. 1998)……....18

16    *Stockwell v. City and Cty. of San Francisco*, 749 F.3d 1107 (9th Cir. 2014)….….21

17    *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395

    (E.D. Cal. 2018)…………………………………………………………………29

18

19    PLAINTIFF'S MOTION FOR CLASS

20    CERTIFICATION - 4

21

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*, 593 F.3d 802 (9th Cir. 2010)...................................................................17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...................27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)......................21, 22, 23

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010).........28

**Statutes**

RCW 59.18.230...............................................................................*passim*

RCW 59.18.170......................................................................................9

RCW 59.18.060......................................................................................9

RCW 59.18.030.....................................................................................10

RCW 19.86.120.....................................................................................11

**Rules**

Fed. R. Civ. P. 23...........................................................................*passim*

Fed. R. Civ. P. 23(a)(1)...........................................................................18

Fed. R. Civ. P. 23(a)(2)...........................................................................20

Fed. R. Civ. P. 23(a)(3).......................................................................22, 23

Fed. R. Civ. P. 23(a)(4)...........................................................................24

Fed. R. Civ. P. 23(b)...............................................................................18

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 5

1

Fed. R. Civ. P. 23(b)(3)........................................................................18, 26, 29

2

Fed. R. Civ. P. 23(g)...............................................................................25, 26

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

PLAINTIFF'S MOTION FOR CLASS

20

CERTIFICATION - 6

21

1

## I.    INTRODUCTION

2    Plaintiff Jennifer Schultz seeks to represent a class of tenants and former

3    tenants of Defendant Avenue5 Residential, LLC's ("Avenue5") Washington state-

4    managed residential rental properties, all of whom signed lease agreements

5    containing provisions that are alleged to violate Washington's Residential Landlord

6    Tenant Act, RCW 59.18, *et seq*. ("RLTA"), and/or Washington's Consumer

7    Protection Act, RCW 19.86, *et seq*. ("CPA").

8    Ms. Schultz's lawsuit was originally filed in the Spokane County Superior

9    Court on January 3, 2023. ECF No. 1. Avenue5 removed the action to this Court on

10    March 30, 2023. *Id*. Given the volume of discovery that needed to be conducted in

11    order to determine if a class should be certified, this Court issued a scheduling order

12    as to certification deadlines only. ECF No. 12.

13    This case centers around illegal lease provisions, which are outlined in RCW

14    59.18.230. This statute provides, in relevant part:[1]

15

16

_____

[1] The standard for damages in Subsection 3 of this statute was amended effective

17    May 10, 2021. Thus, part of the class period will fall under the analysis of the prior

18    version of the law, but for purposes of class certification this is inconsequential.

19    PLAINTIFF'S MOTION FOR CLASS
      CERTIFICATION - 7
20

21

(1)(a) Any provision of a lease or other agreement, whether oral or written, whereby any section or subsection of this chapter is waived except as provided in RCW 59.18.360 and shall be deemed against public policy and shall be unenforceable. . . .

(b) ...A landlord may not threaten a tenant with eviction for failure to pay nonpossessory charges limited under RCW 59.18.283.

(2) No rental agreement may provide that the tenant:

(a) Agrees to waive or to forgo rights or remedies under this chapter; or...

(c) Agrees to pay the landlord's attorneys' fees, except as authorized in this chapter; or

(d) Agrees to the exculpation or limitation of any liability of the landlord arising under law or to indemnify the landlord for that liability or the costs connected therewith; or...

(f) Agrees to pay late fees for rent that is paid within five days following its due date. If rent is more than five days past due, the landlord may charge late fees commencing from the first day after the due date until paid. Nothing in this subsection prohibits a landlord from serving a notice to pay or vacate at any time after the rent becomes due.

(3) A provision prohibited by subsection (2) of this section included in a rental agreement is unenforceable. If a landlord knowingly uses a rental agreement containing provisions known by him or her to be prohibited, the tenant may recover actual damages sustained by him or her, statutory damages not to exceed two times the monthly rent charged for the unit, costs of suit, and reasonable attorneys' fees.

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 8

1    The Avenue5 lease that Ms. Schultz signed contained the following provisions

2  that she alleges are illegal and unenforceable because they require tenants:

3    1) To pay late fees on rent paid within five days of rental payment
        due dates in violation of RCW 59.18.230(2)(f) and 59.18.170;

4

5    2) To pay the landlord's attorney's fees that are not otherwise
        authorized by the RLTA in violation of RCW 59.18.230(2)(c);

6    3) To pay a notice service fee every time the landlord provides a
        notice required under RCW 59.18, *et seq.*, or RCW 59.12, *et seq.*,

7        in violation of RCW 59.18.230(a);

8    4) To pay said notice service fees as additional rent, thereby
        conditioning position upon payment of said fees in violation of

9        RCW 59.18.283(2) and RCW 59.18.230(2)(a);

10   5) To pay fees for pest control in multifamily dwellings in violation
        of RCW 59.18.060(4) and 59.18.230(2)(a);

11

12   6) To release, indemnify and hold harmless owner landlords and
        their partners and agents from all claims and causes of action,
        including but not limited to bodily injury related to the

13       construction of their rental properties in violation of RCW
         59.18.230(2)(d); and/or

14

15   7) To sign a class action waiver that forfeits any right or ability to
        bring, represent, join or otherwise maintain a class action against
        Avenue5 in violation of RCW 59.18.230(2)(d).

16

17    Since Avenue5 assessed thousands of its tenants illegal fees pursuant to some

18  of these illegal lease provisions, Ms. Schultz also seeks to represent a subclass of

19
    PLAINTIFF'S MOTION FOR CLASS
20  CERTIFICATION - 9

21

1  individuals who paid Avenue5 actual monies for fees pursuant to one or more of

2  these illegal lease provisions.

3      This lawsuit raises issues of first impression, as there is no Washington case

4  law analyzing lease provisions for illegality/invalidity and the potential remedies

5  under RCW 59.18.230. As such, Ms. Schultz, in the alternative and/or additionally

6  alleges Avenue5's illegal lease provisions and/or fee assessment thereupon violates

7  the CPA and/or constitutes unjust enrichment.[2]

8      Ms. Schultz seeks to represent the following class:

9      **FOR ALL CLASS MEMBERS:**

10     1)    All persons;
       2)    Who rented any property in Washington State;
11     3)    Where Avenue was the "landlord" of the rental property, as defined by
             RCW 59.18.030(16),
12     4)    Who signed any lease agreement;
       5)    Where the lease agreement contained provisions prohibited by the
13           RLTA.

14

15 _____

[2]*See Lewis v. Zanco*, 16 Wn. App. 2d 819, 820, 483 P.3d 836 (2021) (holding that

16 when the RLTA's statutorily proscribed rights and remedies are not at issue, other

17 tenant/consumer statutory claims, such as those under the CPA may proceed).

18

19 PLAINTIFF'S MOTION FOR CLASS
20 CERTIFICATION - 10

21

1  **SUBCLASS A:**

2  1)  Those individuals that meet the requirements for all class members
       above; and

3
4  2)  Who were required to pay any amounts for late fees imposed before
       five days had passed since the rent was due, for pest control charges
5      (excluding those in a single-family dwelling), for a service fee imposed
       for notice served under RCW 59.12, *et seq.*, or RCW 59.18, *et seq.*,
       and/or for attorney's fees and costs that were not allowed under the
6      RLTA.

7  Ms. Schultz seeks to represent a class period of four years prior to the filing

8  of the lawsuit (i.e., January 3, 2019) to the date that this Court certifies this action,

9  pursuant to the CPA's statute of limitation in RCW 19.86.120. She also seeks to

10  represent a class period of three years prior to filing the lawsuit (i.e., January 3, 2020)

11  for the RCW 59.18.230 violations and unjust enrichment. As detailed below, the

12  requirements of Rule 23 are met, and the proposed class and subclass should be

13  certified.

14  **II.     FACTUAL BACKGROUND**

15  Ms. Schultz is a former tenant of The River House at the Trail Head apartment

16  complex ("The River House Apartments"), which is managed by Avenue5. ECF

17  Nos. 21, 22, ¶¶ 4.1, 4.2. On January 4, 2021, Ms. Schultz signed a lease for a rental

18  unit at the River House Apartments, for a term running from January 4, 2021,

19
20  PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION - 11

21

1  through March 3, 2022. ECF Nos. 21, 22, ¶¶ 4.4. Avenue5's lease agreement and

2  addenda for the River House Apartments consists of more than 70 pages of contract

3  terms. ECF No. 44, ¶ 3. Ms. Schultz's $1,382.00 rental payment was due on the first

4  of every month. *Id*. at Ex. A, Bates Avenue5_68, ¶ 6.

5      Avenue5's lease required Ms. Schultz to 1) pay a $75.00 late fee if her rent

6  was not paid by the 5th day of the month; 2) pay the landlord owner's attorney's fees

7  as a prevailing party if any legal action was halted prior to judgment, or if no legal

8  action was filed, so long as the owner landlord accepted payment of alleged amounts

9  due and owing; 3) pay $25.00 every time a notice required by RCW 59.18. or 59.12

10 was served; 4) pay that $25.00 fee as "additional rent"; 5) pay $1.00 per month for

11 pest control; 6) release the owner landlord and its agents from any liability and/or

12 waive all claims resulting from injury due to the landlord's construction activities;

13 and 7) waive the right to represent or join a class action lawsuit. ECF No. 44, Ex. A.

14     In discovery, Avenue5 provided information that demonstrates that the

15 proposed class and subclass should be certified. For the purposes of this Motion, the

16 parties agreed Avenue5 could provide the number of leases that contained the illegal

17 provisions (as opposed to the number of tenants) due to the sheer number of leases

18 and tenants. The parties also agreed Avenue5's answers could be for a more limited

19
20 PLAINTIFF'S MOTION FOR CLASS
   CERTIFICATION - 12

21

1    time period than the class period sought since that sample size would suffice to

2    demonstrate the appropriateness of certifying a class. ECF No. 44, Ex. D.

3         Avenue5 provided the following facts and information in response to Ms.

4    Schultz's discovery questions. 105,099 leases were signed by Washington tenants at

5    Avenue5's managed rental properties in the four years preceding the filing of the

6    Complaint to the date of Avenue5's answer. ECF No. 44, Ex. B, Rog. No. 3. For the

7    period of January 2018[3] through March 2023, 38,850 of the leases contained the

8    attorney fees provision present in Ms. Schultz's lease. *Id.* at Ex. C, Rog. No. 6.

9    78,535 leases possessed the class action waiver addendum present in Ms. Schultz's

10   lease. *Id.* at Ex. B, Rog. No. 17. 36,384 leases had a construction addendum similar

11   to the one in Ms. Schultz's lease. *Id.* at Ex. B, Rog. No. 16. 27,413 leases contained

12   a provision that required its tenants to pay a fee for service of a notice authorized by

13   RCW 59.18 or RCW 59.12, and 44,482 leases required its tenants to pay fees as

14   additional rent, like Ms. Schultz's lease. *Id.* at Ex. C, Rog. Nos. 9-10. 14,223 tenants

15   were required to pay a pest control fee from June of 2019 to August of 2023. *Id.* at

16

17   _____

18   [3] It is unclear if Avenue5 meant 2019 as opposed to 2018 since the latter date is

     outside the class period. However, this is inconsequential for the instant Motion.

19   PLAINTIFF'S MOTION FOR CLASS
20   CERTIFICATION - 13

21

1  Ex. B, Rog. No. 12. Finally, for the period of June 11, 2020, to November 18, 2024,

2  176 leases required tenants to pay a late fee on or before the 6th day of the month,

3  and less than 100 lease agreements required tenants to pay a late fee on or before the

4  5th day of the month. *Id.* at Ex. C, Rog. No. 4.

5       As to proposed actual damages subclass, Avenue5's answers provided that

6  2,252 of its tenants (652 tenants were issued reversals of the charges) were assessed

7  fees for issuing or serving tenant notices between January 2018 and December 2022.

8  *Id.* at Ex. B, Rog. No. 10. $361,845.08 ($78,405.90 was thereafter reversed) in fees

9  were assessed to its tenants for issuing or serving tenant notices from January 2018

10 through March 2023, with those fees being charged as additional rent. *Id.* at Ex. B,

11 Rog. No. 11. $257,127.27 ($113,889.47 reversed) in late fees were assessed before

12 the 7th day of the month between June 2020 and March 2023. *Id.* at Ex. B, Rog. No.

13 5. In the same period of time, $280,934.53 ($150,592.84 later reversed) in attorney's

14 fees were assessed pursuant to the lease provisions. *Id.* at Ex. B, Rog. No. 7. Finally,

15 nearly a million dollars ($981,351.79 before $43,629.47 in reversals) in pest control

16 fees were assessed in the same time period. *Id.* at Ex. B, Rog. No. 13.

17 //

18 //

19
20   PLAINTIFF'S MOTION FOR CLASS
     CERTIFICATION - 14

21

## III.    AUTHORITY AND ARGUMENT

### A.    The Fundamental Purposes of Fed. R. Civ. P. 23 Are Well Served by Certifying This Proposed Class.

Class actions are favored as an effective means of adjudicating numerous small and similar claims. As the U.S. Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193 (1981). One such "function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group." *Brown v. Brown,* 6 Wn. App. 249, 253, 492 P.2d 581 (1971); *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965 (1985) ("Class actions ... permit the plaintiffs to pool claims which would be uneconomical to litigate individually. [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available.").

This is particularly true in cases involving consumer protection issues. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill. App.3d 995, 574 N.E.2d 760, 764-66 (Ill. App. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection .... To consumerists, the consumer class action is an inviting procedural device to cope

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - 15

with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action - private suits or governmental actions - have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured and deterrence to the wrongdoer.

The Washington Supreme Court has also recently echoed those sentiments as to tenant class actions within the consumer law umbrella. *See Silver v. Rudeen Mgmt. Co.,* 197 Wn.2d 535, 548, 484 P.3d 1251 (2021) (noting that the availability of class action litigation is an important aspect to holding landlords accountable for respecting tenants' rights).

The facts of this case present a model example of claims that are suitable for class treatment. Ms. Schultz and all class members signed lease agreements where Avenue5 was the landlord and which contained the alleged illegal provisions. The illegal provisions are present and uniform across thousands of leases. The potential damages are too insignificant to justify individual suits, and statutory and actual damages are easily determinable. As such, the proposed Class should be certified to achieve the purposes of Rule 23 and ensure that aggrieved individuals obtain a remedy.

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 16

1    **B.    Legal Standard for Class Certification.**

2    The decision to certify a class is committed to the discretion of the trial

3    court. *Gulf Oil,* 452 U.S. at 100; *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir.

4    2014). In determining whether a class action will be certified, the substantive

5    allegations of the complaint should be taken as true. *Blackie v. Barrack,* 524 F.2d

6    891, 901 n.16 (9th Cir. 1975). Here, Ms. Schultz has adequately alleged valid causes

7    of action against Avenue5 for violations of the RLTA, the CPA, and unjust

8    enrichment.

9    Any doubts regarding the propriety of class certification should be resolved

10    in favor of certification. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 267

11    (S.D. Cal. 1988). "Although certification inquiries such as commonality, typicality,

12    and predominance might properly cause for some substantive inquiry, '[t]he court

13    may not go so far . . . as to judge the validity of [the plaintiffs'] claims.'" *United*

14    *Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co.*, 593 F.3d

15    802, 808 (9th Cir. 2010) (citation omitted). Further, an order certifying a class "may

16    be conditional, and may be altered or amended" at any time prior to judgment. Fed.

17    R. Civ. P. 23(c)(1).

18    //

19
     PLAINTIFF'S MOTION FOR CLASS
20    CERTIFICATION - 17

21

1

**C.    Class Certification Is Appropriate under Fed. R. Civ. P. 23.**

2    Class certification requires plaintiffs to demonstrate that they are likely to

3    satisfy the four requirements under Fed. R. Civ. P. 23(a): "(1) the class is so

4    numerous that joinder of all members is impracticable ["numerosity"]; (2) there are

5    questions of law or fact common to the class ["commonality"]; (3) the claims or

6    defenses of the representative parties are typical of the claims or defenses of the class

7    ["typicality"]; and (4) the representative parties will fairly and adequately protect

8    the interests of the class ["adequacy of representation"]."

9    Further, a plaintiff must show that one of the requirements of Fed. R. Civ. P.

10    23(b) is met. Here, Ms. Schultz seeks certification under (b)(3) – that common

11    questions of law or fact predominate over any questions affecting only individual

12    members ("predominance"), and that a class action is a superior method to fairly and

13    efficiently adjudicate the controversy ("superiority").

14    **1.    The Proposed Class Satisfies the Numerosity Requirement.**

15    Rule 23(a)(1) does not "demand that the class be so numerous that joinder is

16    impossible but rather simply that joinder of the class is impracticable." *Smith v. Univ.*

17    *of Wash. Law Sch.*, 2 F. Supp.2d 1324, 1340 (W.D. Wash. 1998) (citing *Harris v.*

18    *Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)). Whether

19
20    PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 18

21

1  joinder would be impracticable does not require a specific minimum number of class

2  members. *See Id.* (internal citations omitted). In general, a class consisting of 40 or

3  more members is presumed to be sufficiently numerous. *In re Washington Mut.*

4  *Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011).

5      In this case, although the exact number of class members is unknown at this

6  time, Avenue5's discovery answers conclusively show that numerosity is

7  established. Those answers show that: 78,535 of its leases[4] contained the class action

8  waiver; 38,850 leases possessed the attorneys' fees provision; 36,384 leases

9  contained the construction liability waiver provision; 44,482 leases had a provisions

10  that required tenants to pay service of notice fees as additional rent; 27,413 leases

11  required tenants to pay a fee for service of landlord tenant notices; 14,223 tenants

12  were required to pay a pest control fee; and at least 179 leases required tenants to

13

14  _____

[4] For most of its Responses, Avenue5 was presently only able to provide the

15  number of leases signed that contained the alleged illegal provisions, and not the

16  number of tenants. Undoubtedly, thousands of those leases were signed by multiple

17  tenants, and thus, the number of potential class members is much greater than the

18  number of signed leases reported.

19  PLAINTIFF'S MOTION FOR CLASS

20  CERTIFICATION - 19

21

1  pay a late fee before the 7th day of the month. ECF No. 44 at Ex. B, Rog. Nos. 3,

2  12, 16, 17,  Ex. C, Rog. Nos. 4, 6, 9, 10.

3       Further, as to the subclass of tenants alleged to have suffered actual damages,

4  the answers also illustrate the requisite numerosity with assessed total fees ranging

5  from $257,127.27 at the lowest for late fees, to nearly $1,000,000 for pest control.

6  These fees were collected from thousands of tenants. As such, numerosity is

7  established. *Id.* at Ex. B, Rog Nos. 5, 7, 10, 11, 13.

8       **2.**    **The Proposed Class Presents Common Questions of Law and Fact.**

9

10       Rule 23(a)(2) requires "questions of law or fact common to the class." The

11  commonality requirement has "'been construed permissively' and '[a]ll questions of

12  fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale*

13  *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration in original) (quoting *Hanlon v.*

14  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Commonality can be satisfied

15  by even "a single *significant* question of law or fact." *Abdullah v. U.S. Sec. Assoc.,*

16  *Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original and citation omitted).

17  As the Supreme Court has explained, "[c]ommonality requires the plaintiff to

18  demonstrate that the class members 'have suffered the same injury,'" such that "all

19  PLAINTIFF'S MOTION FOR CLASS

20  CERTIFICATION - 20

21

1   their claims can be productively litigated at once." *Wal-Mart Stores, Inc. v. Dukes*,

2   564 U.S. 338, 350 (2011).

3        Key to certification "is not the raising of common 'questions' – even in droves

4   – but, rather the capacity of a class wide proceeding to generate common *answers* apt

5   to drive the resolution of the litigation." *Id.* (emphasis in the original) (internal

6   quotation marks and citation omitted). Commonality is thus satisfied where the

7   claims of all class members "depend upon a common contention … of such a nature

8   that it is capable of classwide resolution—which means that determination of its

9   truth or falsity will resolve an issue that is central to the validity of each one of the

10  claims in one stroke." *Id.* As such, "commonality is generally satisfied where the

11  lawsuit challenges a system-wide practice or policy that affects all of the putative

12  class members." *Benitz v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 WL

13  309200, at *5 (E.D. Cal. Jan. 21, 2020) (internal quotation marks and citations

14  omitted).

15       Moreover, "whether class members could actually prevail on the merits of

16  their claims is not a proper inquiry in determining the preliminary question of

17  whether common questions exist." *Stockwell v. City and Cty. of San Francisco*, 749

18  F.3d 1107, 1112 (9th Cir. 2014) (internal citations and quotations omitted). The

19  PLAINTIFF'S MOTION FOR CLASS
20  CERTIFICATION - 21

21

1    purpose of class certification is simply to "select the metho[d] best suited to

2    adjudication of the controversy fairly and efficiently." *Id.* (quoting *Amgen Inc. v.*

3    *Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 460 (2013) (internal

4    quotation marks omitted)).

5        In order to assess commonality, a court must identify the elements of the class

6    members' case-in-chief. *Parsons*, 754 F.3d at 676. Here, the common questions

7    presented by the putative class is whether one or more of the seven different

8    provisions in Avenue5's leases violate Washington law. The answers to those

9    common questions are found within RCW 59.18, *et seq.*, and this Court's

10   interpretation thereof and application to the uniform facts presented in this action.

11   Accordingly, the questions presented in this action can be answered with single

12   answers that will drive the resolution of the proposed class claims. Therefore,

13   commonality is satisfied. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 (commonality

14   is satisfied when plaintiff shows that a class wide proceeding would "generate

15   common *answers* apt to drive the resolution of the litigation.").

16         **3.**    **Ms. Schultz's Claims Are Typical of the Class.**

17       Typicality is met if "the claims or defenses of the representative parties are

18   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The Supreme

19
20   PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION - 22

21

1 | Court has recognized that "[t]he commonality and typicality requirements of Rule

2 | 23(a) tend to merge. Both serve as guideposts for determining whether under the

3 | particular circumstances maintenance of a class action is economical and whether

4 | the named plaintiff's claim and the class claims are so interrelated that the interest of

5 | the class members will be fairly and adequately protected in their absence." *Gen.*

6 | *Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality"

7 | means that the named plaintiffs "suffer the same injury as the class members." *Wal-*

8 | *Mart*, 564 U.S. at 348. "[T]he typicality inquiry involves comparing the injury

9 | asserted in the claims raised by the named plaintiffs with those of the rest of the

10 | class." *Armstrong v. Davis,* 275 F.3d 849, 869, (9th Cir. 2001). It is not necessary

11 | "that the named plaintiffs' injuries be identical with those of the other class

12 | members, only that the unnamed class members have injuries similar to those of the

13 | named plaintiffs and that the injuries result from the same, injurious course of

14 | conduct." *Id.*; *see also Parsons*, 754 F.3d at 686 ("Rule 23(a)(3) requires only that

15 | [named plaintiffs'] claims be 'typical' of the class, not that they be identically

16 | positioned to each other or to every class member.").

17 |     Here, Ms. Schultz and the putative class members have suffered the same

18 | injury – having lease agreements with landlord Avenue5 that contain illegal

19 | PLAINTIFF'S MOTION FOR CLASS
20 | CERTIFICATION - 23

21

provisions and being assessed illegal fees pursuant to one or more of those provisions. Because Ms. Schultz and the putative class members allege the same harmful practices, typicality is satisfied. *See Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 159 (N.D. Cal. 2015) (finding typicality where "[e]ach named Plaintiff declares exposure, like all other members of the putative class and subclass, to a substantial risk of serious harm due to the challenged policies and practices.").

### 4. Ms. Schultz Will Fairly and Adequately Protect the Interests of the Class.

The Fed. R. Civ. P. 23(a)(4) element of class certification is required in order to satisfy due process concerns that "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). Determining adequacy of representation requires applying a two-prong test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Here, Ms. Schultz "has the same claims as the members of the class," and all of the claims are based on the same factual and legal theories. She is committed to vigorously litigating this matter, as demonstrated by her efforts in this litigation

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 24

1    already. ECF No. 44, ¶ 17; ECF No. 45, ¶ 11. Neither Ms. Schultz nor her counsel

2    have any interests which might cause them to not "vigorously pursue this claim."

3    ECF No. 44, ¶¶ 2, 14, 17; ECF No. 45, ¶ 9. At this juncture, there is no indication

4    that Ms. Schultz is in any way ill-equipped to serve as faithful class representative

5    for the duration of the case.

6           **5.    Proposed Class Counsel Are Qualified to Litigate This Class Action.**

7    In appointing class counsel, the Court must consider: "(i) the work counsel

8    has done in identifying or investigating potential claims in the action; (ii) counsel's

9    experience in handling class actions, other complex litigation, and the types of

10   claims asserted in the action; (iii) counsel's knowledge of the applicable law; and

11   (iv) the resources that counsel will commit to representing the class." Fed. R. Civ.

12   P. 23(g)(1)(A). Class counsel must also "fairly and adequately represent the interests

13   of the class." *Id.* at 23(g)(4).

14   Here, Ms. Schultz's counsel clearly satisfy the requirements of Fed. R. Civ.

15   P. 23(g). Ms. Schultz's counsel have extensive experience with class action litigation

16   and have been determined adequate class counsel in numerous other class action

17   proceedings. ECF No. 44, ¶¶ 10-13; ECF No. 45, ¶¶ 5-8. Further, Ms. Schultz's

18   counsel have long focused on advocating for tenants' rights in Washington. *Id.*

19   PLAINTIFF'S MOTION FOR CLASS

20   CERTIFICATION - 25

21

1   Lastly, proposed class counsel have committed and will continue to commit

2   significant resources to the prosecution of this litigation. ECF No. 44, ¶ 14; ECF No.

3   45, ¶ 10.

4               **6.    Predominance and Superiority Are Satisfied in This
                        Matter.**

5

6   "Under Rule 23(b)(3), a plaintiff must demonstrate that the questions of law

7   or fact common to class members "predominate" over any questions affecting only

8   individual members and the "superiority" of maintaining litigation as a class action.

9   *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir.

10  2012) (quoting FRCP 23(b)(3)). "[T]he focus of the predominance inquiry is

11  whether a proposed class is sufficiently cohesive to warrant adjudication by

12  representation." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020)

13  (citations and internal quotations omitted). "But the rule does not require a plaintiff

14  seeking class certification to prove that each element of their claim is susceptible to

15  classwide proof, so long as one or more common questions predominate."

16  *Id.* (citation and internal quotations marks omitted). Individual differences in

17  calculating damages will not defeat class certification where common

18  issues otherwise predominate. *Id.*

19

20  PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION - 26

21

Here, if any of the lease provisions are illegal, Ms. Schultz and the class are entitled to statutory damages. Further, as to the proposed subclass, depending on which provisions are determined illegal, the actual damages (fees paid to Avenue5 under illegal lease provisions) are easily determined from Avenue5's records. Certification is proper even if Avenue5 claims that determining exactly who falls within the class may require review of voluminous business records. *See Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 538–39 (N.D. Cal. 2015) (certifying class despite need to review defendant's voluminous business records to identify people who met proposed class definition). Further, individualized damages inquiries do not defeat certification. *Blackie*, 524 F.2d at 905 ("[t]he amount of damages is invariably an individual question and does not defeat class action treatment."); *Leyva v. Medline Indus.*, 716 F.3d 510, 513 (9th Cir. 2013) (noting that nearly all damages determinations are individual in wage and hour claims and to "decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.")

As to the "superiority" prong, "[a] class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996); *see also Nichols v. Geico Gen. Ins. Co.*,

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 27

1  2021 U.S. Dist. LEXIS 81565, *30-31 (W.D. Wash. 2021) ("Although litigation of

2  the manageability issue accounts for much superiority law, courts deny class

3  certification on manageability grounds relatively *infrequently* and primarily in

4  certain carefully circumscribed situations"). The purpose of the superiority

5  requirement is to ensure judicial economy and that a class action is the "most

6  efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land*

7  *Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

8      The superiority inquiry requires a comparative evaluation of alternative

9  mechanisms of dispute resolution. *Hanlon*, 150 F.3d at 1023. Courts generally

10 consider four factors in evaluating the superiority requirement: "(A) the class

11 members' interests in individually controlling the prosecution or defense of separate

12 actions; (B) the extent and nature of any litigation concerning the controversy

13 already begun by or against class members; (C) the desirability or undesirability of

14 concentrating the litigation of the claims in the particular forum; and (D) the likely

15 difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). All four factors

16 support certification in the matter at hand.

17     Here, the proposed class members are a substantial number of Washington

18 tenants and former tenants seeking to recover relatively small amounts – statutory

19

20 PLAINTIFF'S MOTION FOR CLASS
   CERTIFICATION - 28

21

1 | damages either limited to maximums of $500.00 or twice the monthly rent paid
2 | depending on when the violation occurred, and minimal actual damages (ranging
3 | from a $1.00 pest charge per month to $75.00 late fees and/or attorney's fees not
4 | authorized by the RLTA). Concentrating the multitude of identical and relatively
5 | small value claims of the class members in one action is a far superior method of
6 | adjudication than litigating a vast number of individual actions. *Local Joint Exec.*
7 | *Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,
8 | 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual
9 | sums" are particularly well suited to class treatment); *see also United States ex rel.*
10 | *Terry v. Wasatch Advantage Grp., LLC,* 327 F.R.D. 395, 418-19 (E.D. Cal. 2018)
11 | (finding superiority where proposed class was hundreds of tenants seeking damages
12 | of a few thousand dollars each).

13 | As to the second factor, Ms. Schultz is not aware of any other litigation
14 | concerning Avenue5's inclusion of illegal provisions in its leases. ECF No. 44, ¶ 16.
15 | Additionally, this is a desirable forum for this litigation, as all potential class
16 | members are Washington residents and this Court has experience overseeing class
17 | action matters. Moreover, Ms. Schultz has identified legal questions amenable to
18 | summary judgment in this matter – specifically, are any, some, or all the alleged
19 |
   | PLAINTIFF'S MOTION FOR CLASS
20 | CERTIFICATION - 29

21 |

1    provisions illegal under Washington law, and if so, what damages should be

2    awarded. Resolving those questions for a vast number of people in one action is far

3    superior to resolution of legions of individual, and given the numbers involved,

4    likely inconsistent adjudications.

5        Finally, there are no difficulties anticipated with the management of the class

6    action. As class actions go, this one is simple. It contains violations with similar

7    damages across the board. If the Court finds a violation, the Court or the fact-finder

8    can determine the appropriate statutory damages to award. Further, for those tenants

9    and former tenants that have suffered actual damages, the amounts can easily be

10   located and calculated through review of Avenue5's records. Accordingly, the final

11   factor also favors certification of the class. *See Chavez v. Our Lady of Lourdes Hosp.*

12   *at Pasco*, 190 Wn.2d 507, 521-523, 415 P.3d 224 (2018) (stating that manageability

13   concerns "will rarely, if ever be in itself sufficient to prevent class certification";

14   noting further that even in cases where individual questions need answered there are

15   a litany of tools that can and should be used before determining that a class is

16   unmanageable).

17       In this case, as in many class actions, denial of class status would effectively

18   deny any judicial remedy for thousands of tenants. *Eisenberg v. Gagnon*, 766 F.2d

19
     PLAINTIFF'S MOTION FOR CLASS
20   CERTIFICATION - 30

21

1    770, 785 (3rd Cir. 1985). Prosecution of this case as a class action will "achieve

2    economies of time, effort, and expense, and promote uniformity of decision as to

3    persons similarly situated, without sacrificing procedural fairness or bringing about

4    other undesirable results." *Advisory Comm. on Rule 23, Proposed Amends. to the*

5    *Rules of Civ. Proc.*, (1966). Here, the predominance and superiority elements are

6    satisfied. Accordingly, this Court should certify the class.

7                                    **IV.    CONCLUSION**

8            At this stage of the proceedings, "if there is to be an error made, let it be in

9    favor and not against the maintenance of the class action, for it is always subject to

10   modification should later developments during the course of the trial so

11   require." *Brown,* 6 Wn. App. at 256. Accordingly, for the foregoing reasons,

12   Plaintiff respectfully requests this Court grant her Motion for Class Certification

13           DATED this 31st day of December 2024.

14

15   CAMERON SUTHERLAND, PLLC            HOGUE LAW FIRM

16   *s/ Shayne J. Sutherland*                    *s/ Christopher M. Hogue*
     Shayne J. Sutherland                          Christopher M. Hogue
17   WSBA No. 44593                                WSBA No. 48041
     Attorney for Plaintiff                         Attorney for Plaintiff

18

19   PLAINTIFF'S MOTION FOR CLASS
20   CERTIFICATION - 31

21

1    **CM/ECF CERTIFICATE OF SERVICE**

2        I certify that on the date indicated below I caused an electronic copy of the

3    foregoing document to be filed with the Clerk of the Court via CM/ECF system

4    which will then send notification of such filing to all parties by operation of the

5    Court's electronic filing system. Parties may access this filing through the Court's

6    system.

7        DATED this 31st day of December 2024.

8                                    s/ Christopher M. Hogue
                                     Attorney for Plaintiff
9

10

11

12

13

14

15

16

17

18

19    PLAINTIFF'S MOTION FOR CLASS
      CERTIFICATION - 32
20

21