# EXHIBIT A

## APARTMENT LEASE CONTRACT

Date of Lease Contract: _____ **January 4, 2021** _____
*(when the Lease Contract is filled out)*

*This is a binding document. Read carefully before signing.*

### Moving In — General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract):*

   Jennifer Schultz

   and *us*, the owner: **River House at the Trail Head**

   *(name of apartment community or title holder).* You've agreed to rent Apartment No. __R-302__, at 16801 E **Mission Parkway**

   _____ *(street address)* in **Spokane Valley** _____ *(city),* Washington, __99216__ *(zip code)* (the "apartment" or the "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

   Kerry Schultz

   No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than _____ days in any 12 month period or __10__ consecutive days without our prior written consent. If the previous space isn't filled in, two days per month is the limit. Receipt of mail at the apartment by any person not listed on this agreement shall be deemed to be proof of occupancy by that person. Any person in the unit, with or without the Resident's knowledge, including but not limited to invitees of guests or other invitees, shall be deemed to be guests for purposes of this agreement.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the __4th__ day of __January__, 2021, and ends at 11:59 p.m. the __3rd__ day of __March__, 2022.

   **Renewal.** This Lease Contract will automatically renew month-to-month unless either party gives at least __20__ days written notice of termination or intent to move-out as required by paragraph 44 (Move-Out Notice). If the number of days isn't filled in, at least 20 days notice is required before the expiration date above or, if the lease has renewed on a month-to-month basis, at least 20 days notice is required before the end of the month renewal period.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __600.00__, due on or before the date this Lease Contract is signed. **Your security deposit will be held in an escrow company or bank escrow account located in Washington until disposition.** See paragraphs 48 (Security Deposit Deductions and Other Charges), and 49 (Deposit Return, Surrender,

and Abandonment), for security deposit return information. Any nonrefundable fees will be described in paragraph 10 (Special Provisions) or on addendums to this lease. If we sell the apartments, we will transfer your security deposit to the new owner who will give you any required statutory notices. In the case of multiple residents, the security deposit shall not be returned until the final Resident on the agreement has vacated and Owner reserves the right to issue any refund check in the name of all Residents or only in the name of the final remaining Resident. It is the Residents' sole responsibility to allocate any refunded amount between themselves.

5. **KEYS.** You will be provided __2__ apartment key(s), __1__ mailbox key(s), __1__ FOB(s), and/or _____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ __1382.00__ per month for rent, payable in advance and without demand:

   ☒ at the on-site manager's office, or
   ☒ at our online payment site, or
   ☐ at _____

   Prorated rent of $ __1248.26__ is due for the remainder of the *[check one]:* ☐ 1st month or ☐ 2nd month, on __January 4__, __2021__.

   Otherwise, you must pay your rent, in advance, on or before the 1st day of each month (due date) with no grace period. No matter what day the rent is actually due under this Lease, the rental period shall be from the first day of the month to the last day of the month during the Lease and during any month-to-month tenancy following the end of the Lease. All move in costs, including the first month's rent, deposit, and non-refundable fee, if applicable, shall be paid only by certified check or cashier's check—not by personal check. Any amount paid after the first day of the month shall be paid only by money order, certified check or cashier's check. Cash is unacceptable for any amount due under this Agreement, without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the __5th__ day of the month (which date shall not be before the 5th day after the date rent is due), you'll pay a late charge. The late charge will be *[check one]:* ☒ a flat rate of $ __75.00__ or ☐ _____ % of your total monthly rent payment. Resident understands and agrees that the rent is due on or before the first day of the month, and any grace period before late charges accrue shall not change the rent due date. If you pay your rent after the late date specified in this paragraph or after the issuance of a 14-day notice, payments must be by certified check, cashier's check or money order. You'll also pay a charge of $ __35.00__ for each returned check or rejected electronic payment, plus a late charge. After __2__ checks are returned by your bank for any reason, all future payments due during the remainder of your tenancy, notwithstanding the signing of any new lease agreements, must be by cashier's check, certified check or money order only. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. All money obligations to be paid under this Lease Contract shall be considered rent as defined by law. If this community has a drop box, it is provided only as a convenience to the Residents. Use of the drop box for payment of rent, or any other amount, and for providing notices to the Owner are at the sole risk of loss or theft of the Resident. If any payment is lost prior to receipt by the Owner, Resident agrees to immediately replace the payment at their sole cost. Resident is strongly encouraged to make all payments directly to the Owner and to obtain a receipt

*Jennifer Schultz*

JS000162

©2020, National Apartment Association, Inc. – 8/2020, Washington

for all payments. In addition to the monthly rent, you agree to pay us the sum of $ _____200.00_____ as a one-time, non-refundable administrative fee. The fee will not be returned or credited to any charges owing by you at the time of move out.

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water  ☐ gas  ☐ electricity  ☐ master antenna
☐ wastewater  ☐ trash  ☐ cable TV
☐ other _____

You'll pay in full as billed for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If recycling is mandated by law, then Residents will be equally charged if the community is assessed any recycling related fines.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all Tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☐ require ☒ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or other remedies as provided by this Lease Contract or state law. If personal liability insurance is required, you are required to provide proof of insurance upon commencement of the tenancy and upon written request.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

---

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

<u>See special provisions on the last page</u>
_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of *[check one]* ☒ $ _____0_____ or ☐ _____ % of the rent (not to exceed 100% of the highest monthly rent during the Lease Contract term) if you:

(1) fail to give written move-out notice as required in paragraph 44 (Move-Out Notice) or any other applicable law; or
(2) move out without paying rent in full for the entire lease term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

**Lease Buy Out.** If you desire to buy out your Lease Contract early please refer to your Lease Buy Out Agreement. If you have not been provided with a Lease Buy Out Agreement you must contact us regarding such an agreement. A lease buy out may not be available in all cases. Other than as required by law or otherwise stated in this Lease Contract the Lease Buy Out Agreement shall govern the means by which you may terminate your tenancy before the end of its term.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence, by you or your guests or occupants. In addition, unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from your or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN APARTMENT.**
**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 49 - Deposit Return, Surrender, and Abandonment).

**Storage.** We may store, but **other than as may be required by law** have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft unless otherwise provided by law. You must pay reasonable charges for our packing, removing, storing, and selling any property.

**Redemption.** If we've seized and stored property as authorized by the state statute, you may redeem the property by paying all reasonable moving and storage fees if you make written request for the return of the property before we have sold or disposed of it. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, ☐ money order, or certified check.

*Jennifer Schultz   Michell Rigsby*

©2020, National Apartment Association, Inc. - 8/2020, Washington

**Disposition or Sale.** We may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 day after a writ of restitution is executed, following a judicial eviction.

Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property described in (1) and (2) above not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 45 days after written notice to you. Our notice may be sent to you first class mail to your last known address or to any other addresses you provided us in writing or any other address known to us for you. Our notice will include (1) our name and the address where we may be contacted, (2) the place where your property is stored, (3) a statement informing you that a sale or disposition of your property will take place in accordance with state law, (4) the date of the sale or disposal (which may be no sooner than 45 days from the date of notice), and (5) a statement informing you of your right (upon payment of storage charges) to have the property returned prior to its sale or disposition. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. We'll hold any excess proceeds from the sale for you for one year from the date of sale. If no claim is made to the proceeds in that year, we may retain the proceeds.

However, if your property that we are storing has a cumulative value of $250 or less, we may sell or dispose of your property (except for personal papers, family pictures, and keepsakes) after 7 days from the date that we mailed notice to you of the prospective sale or disposal. We'll send you a 45 day notice before we dispose of any personal papers, family pictures, and keepsakes.

After writ of restitution is issued, if we receive timely notice from you or your representative that you want us to store your personal property, we will do so in accordance with the requirements of RCW 59.18.312.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or your failure to pay any subsequent rent or other charges owing under this Lease Contract, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 33 (Default by Resident) apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules/Facilities). If we give you at least 60 days written notice of rent increases or lease changes effective when the Lease

term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 44 (Move-Out Notice).

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The lease will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it without prior notice to you.

---

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES/FACILITIES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. After 30 days written notice, we may make changes to written rules, effective on completion of your lease term, or in a month-to-month tenancy, effective at the end of the next calendar month. You understand and agree that any and all facilities provided by us are provided as a gratuity and their use is not part of the rent that you pay. We reserve the right to change or limit the hours of any such facilities, or to eliminate them completely without prior notice to you or any other residents, and that any such action shall not constitute any claim by you for diminished rental value or a claim of default under the terms of this agreement by us.

**20. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You,

your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

©2020, National Apartment Association, Inc. - 8/2020, Washington

Page 3 of 9

21. **PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following: criminal activities, behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia (as defined by either Washington State or Federal Law, including marijuana); engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances, or anything that may increase our insurance costs; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

22. **PARKING.** We may regulate the time, manner, and place of parking of all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. Parking spaces may not be used for storage of vehicles. Your vehicle(s) must be moved every _____ days, including vehicles parked in all guest or handicapped spaces. If you have a reserved parking space, or a garage, you are required to use that space, or your garage, first. We may have unauthorized or illegally parked vehicles towed. A vehicle is unauthorized or illegally parked in the apartment community if it:

    (1) has a flat tire or other condition rendering it inoperable; or
    (2) is on jacks, blocks or has wheel(s) missing; or
    (3) has no current license plate or no current registration and/or inspection sticker; or
    (4) takes up more than one parking space; or
    (5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
    (6) is parked in a marked handicap space without the legally required handicap insignia; or
    (7) is parked in a space marked for manager, staff, or guest at the office; or
    (8) blocks another vehicle from exiting; or
    (9) is parked in a fire lane or designated "no parking" area; or
    (10) is parked in a space marked for other resident(s) or unit(s); or
    (11) is parked on the grass, sidewalk, or patio; or
    (12) blocks garbage trucks from access to a dumpster ; or
    (13) belongs to a resident and is parked in a visitor or retail parking space.

23. **RELEASE OF RESIDENT.** Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 32 (Responsibilities of Owner), 44 (Move-Out Notice), or any other applicable law, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, or bad health.

24. **MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

25. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and access control.

    **Statutory Notice Regarding Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish a smoke detector and carbon monoxide detector in the apartment as required by statute. We'll test the smoke detector and carbon monoxide detector and provide working batteries (if applicable) when you first take possession. After that, you must maintain the smoke detector and carbon monoxide detector and replace any batteries as needed, at your expense. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable, remove, or damage smoke detectors or carbon monoxide detectors. If the foregoing is violated or you fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water. You acknowledge that we have advised you: (i) that the apartment is equipped with a smoke detector and carbon monoxide detector, (ii) of your responsibility to maintain the smoke detector and carbon

monoxide detector in proper working condition, and (iii) that you may be subject to fines of up to $200 or other penalties for your failure to comply with the provisions of RCW 43.44.110. You confirm that the smoke detector and carbon monoxide detector was operational as of the date of your inspection, and (iv) following the commencement of the lease term, you will pay for and replace the smoke detector and carbon monoxide detector batteries, if any, as needed. You must not permit or cause the removal, disconnection, or disabling of the smoke detector or carbon monoxide detector.

**Casualty Loss.** Unless caused exclusively by our negligence, we're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism, unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

26. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. To the extent allowed by law, we disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in which must be completed by you and returned to us. Unless otherwise noted on the form, everything will be considered to be in a clean, safe, and good working condition upon move-in. You understand that items noted on a move in inspection form do not indicate an agreement by us to clean, repair or replace that noted item. All maintenance requests must be in writing and on a separate maintenance request form.

    You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

*Jennifer Schultz's Signature (Sign)*

JS000165

27. **REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; broken windows, wet areas on floors, walls or ceilings; electrical problems; malfunctioning lights; broken or missing locks or latches, toilets or faucets; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

28. **ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals. No pets will be allowed to visit the property and no "pet-sitting" shall be allowed. If a pet becomes a problem in our sole opinion, we reserve the right to require that the pet be removed from the property. Once a pet has been removed from the property, the pet deposit for that pet shall not be returned during the tenancy even though the animal is no longer on the property. If you have pets, assistance or service animals, they must be secured during maintenance work. If they are not secured and pose any type of danger to Maintenance, in our sole opinion, Maintenance shall be entitled to leave the unit prior to the completion of the work and it shall be your sole responsibility to schedule a return by Maintenance for the completion of the work after the animal has been secured.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may kennel the animal or contact a humane society or local authority for pick up. When kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

29. **WHEN WE MAY ENTER.** If you or any guest or occupant is present and gives permission to enter, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. Otherwise, as allowed by law, the persons listed in (2) below may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:

(1) written notice of the entry is hand delivered to someone in the apartment or is left in a conspicuous place in the apartment at least 48 hours before entry (or 24 hours before entry if entry is to show the apartment to prospective residents or purchasers at a specified time). No prior notice is needed in emergencies or situations when prior notice is impractical; and

(2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector or carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control; removing or rekeying unauthorized access control; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents. We reserve the right to refuse maintenance work if only a person under age 18 is present at the time of the scheduled work. Refusal to allow us or our agents or vendors to enter the unit after proper notice, if required, shall be a material violation of this agreement.

30. **JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 49 (Deposit Return, Surrender and Abandonment).

## Replacements

31. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge will not be due;
(2) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; and
(3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Lease Contract is signed.

*Jennifer Schultz* JS000166

Responsibilities of Owner and Resident

**32. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Condition of the Premises and Alterations);

(2) maintain fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing;

(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable;

(5) commence steps, within 24 hours after our receipt of written notice from you (except where circumstances are beyond our control), to restore hot or cold water, heat, electricity or to remedy situations imminently hazardous to life;

(6) commence steps, within 72 hours after our receipt of written notice from you (except where circumstances are beyond our control), to remove or remedy a condition that deprives you of the use of a refrigerator, range and oven, or major plumbing fixture supplied by us; and

(7) commence steps, within 10 days after our receipt of written notice from you (except where circumstances are beyond our control), to repair or remedy all other items for which we are responsible that are not described in (5) or (6) above.

We have no duty to repair if the defective condition was caused by you, your guests, or others acting under your control, or if you unreasonably fail to allow us access to the apartment to make such repairs.

You may not repair items yourself and deduct the cost of repairs from your rent unless you have fully complied with the statutory requirements for doing so. Under state statute, you must be current in your payment of rent (including utilities) before exercising any statutory or Lease Contract remedy.

**33. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government; (6) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct); or (8) any illegal drugs or paraphernalia are found in your apartment or illegal drugs are used in your apartment.

**Lease Renewal When a Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, we may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction—Nonpayment of Rent.** If you default in rent payment we may end your right of occupancy by giving you 14 days written notice to vacate. The notice will state that you are required to either pay rent in full within 14 days or vacate. Notice may be by: (1) personal delivery to any resident; (2) if a resident is unavailable, personal delivery at the apartment to any occupant of suitable age and discretion in addition to regular mail delivery to a resident; or (3) if no one of suitable age and discretion is home, by leaving a copy of the notice in a conspicuous place in the unit or on the door, delivering a copy to any person in the apartment (if one can be found), and mailing notice to a resident. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; or to past or future rent or other sums; or to continue with eviction proceedings.

**Eviction—All Other Violations.** If you default other than by nonpayment of rent, as defined by Washington state law, we may end your right of occupancy by giving you 10 day notice, and this notice will state that you must either remedy your breach or vacate the apartment within the 10 day period. Notice may be given in the same manner as the nonpayment of rent notice described above. However, if you permit waste on the premises, operate an unlawful business, or if conduct by you or your guests constitutes a nuisance, or if you are occupying the unit without color of title or the permission of the owner, we may give you 3 days notice to vacate. If you fail to vacate the apartment after service of a termination notice made 20 days or more before the end of the monthly rental period, we are not required to give you any additional notice. Resident understand that if Resident is given a notice to pay or comply or vacate and chooses to vacate the unit during the period of the notice, that the Resident shall remain liable for the rent through the end of the lease term or the next month in the case of a month-to-month tenancy.

**Acceleration.** All monthly rent for the rest of the lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the lease term or renewal period ends; and (2) you've not paid all rent for the entire lease term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) subject to our mitigation duties, you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party reasonable attorney's fees and all other litigation costs. The Owner shall be deemed to be the prevailing party if the action voluntarily is halted by the Owner prior to judgment, or if the case is not filed, prior to filing, on the basis that the Owner accepted from the Resident all or part of the amounts alleged to be owing, or on the basis that the Resident vacated the rental unit. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 12% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll make a reasonable effort to relet and mitigate damages after we learn of your early move out or abandonment. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

*Jennifer Schultz    Mickell Rigsby*

JS000167

## General Clauses

**34. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No verbal agreements, advertisements, warranties or representations have been made or relied upon by either party or any agent or employee of either party.

**36. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights, or our acceptance of rent after a notice of non-compliance or non-payment isn't a waiver under any circumstances.

**37. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

**38. MISCELLANEOUS.**
A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
I. All lease obligations must be performed in the county where the apartment is located.
J. Resident has completed an application in connection with executing this Lease. Owner has relied upon the statements set forth in said application in deciding to rent the Premises to Resident. It is agreed that should Owner subsequently discover any misstatements of fact in the Resident's application, such misstatements shall be deemed a material and incurable breach of this Lease and shall entitle Owner to serve Resident with a three-day notice terminating the tenancy under RCW 59.12.030(6).
K. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**40. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**41. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Property Left in Apartment) or utility payments subject to governmental regulations) first to pay any outstanding 14 day notice if payment is during the compliance period of that notice, then to current rent—regardless of notations or restrictive endorsements on checks or money orders and regardless of when the obligations arose, and finally to non-rent amounts owing. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**44. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by paragraph 3 (Lease Term). If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 23 (Release of Resident) except if you are able to terminate your tenancy under the statutory rights explained under paragraphs 11 (Early Move-Out), 23 (Release of Resident), or other termination method allowed by Washington state law. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If you are moving out prior to the end of the lease term, then you will be liable for the rent through the end of the lease term or until the apartment is re-rented. If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**45. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 21-day period (or as amended by state law) for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**46. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. Carpets must be professionally cleaned by a third party truck style cleaner. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges. In lieu of liability for cleaning charges, we may charge you a non-refundable cleaning fee which will be described in paragraph 10 (Special Provisions) or an addendum to this Lease Contract and will not be construed as part of any security deposit.

*Jennifer Schultz*    *Mickell Rigsby*

©2020, National Apartment Association, Inc. - 8/2020, Washington

JS000168

**47. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection, but the move-out inspection will not be delayed to accommodate your schedule. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

If a pre-move-out inspection is held, the final charges for move out damages will be determined at the inspection after you have vacated the unit. No statements made by us during any pre-move inspection shall limit those charges.

**48. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable, which may be withheld from your security deposit upon expiration of the Lease Contract (this list is not deemed to exclude charges for damages not specifically listed): unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector or carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges under paragraphs 6 (Rent and Charges) and 28 (Animals); government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You acknowledge and agree that any cleaning or damages due to smoke damage from any source, including but not limited to cigarettes, cigars, pipes, candles or incense, shall not be considered to be normal wear and tear and that you will be charged for all such cleaning, repair or replacement costs.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 33 (Default by Resident); and (3) a reletting fee if you have violated paragraph 11 (Early Move-Out).

**49. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT. Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 21 days or as amended by Washington state law after the lease is terminated, and you surrender the apartment, or 21 days or as amended by Washington state law after we learn of your abandonment. We reserve the right to amend the charges listed due to later-discovered damages, or if only an estimate was available during the 21 day or as amended by Washington state law period and the actual amount differs from the estimated charges.

**Surrender.** You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first.

**Abandonment.** You have abandoned the apartment when all of the following have occurred: (1) you are in default for nonpayment of rent, and (2) you have either told us you do not intend to continue tenancy or evidence indicates this intention. Evidence of this intention includes without limitation your removal of some or all of your clothes, furniture, or personal belongings or the disconnection of utilities to your unit that are not in our name.

Surrender, abandonment, or judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

## Severability, Originals and Attachments, and Signatures

**50. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**51. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**Name, address and phone number of owner or owner's representative for notice and process purposes (include name of county in State of Washington)**

Avenue5 Residential, LLC
16621 E. Indiana Avenue

Spokane Valley, WA. 99206
Spokane
(509)838-7888

Your security deposit will be deposited in:

Escrow Company or Bank Name: _____

Address: _____

Your canceled check will be your deposit receipt.

> **You are legally bound by this document.**
> **Read it carefully before signing.**

**Resident or Residents** *(all sign below)*

_____
_____
_____
_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

_____

**Name and address of locator service** *(if applicable)*

_____
_____

**Date form is filled out** *(same as on top of page 1)*
01/04/2021

JS000169

©2020, National Apartment Association, Inc. - 8/2020, Washington

State of Washington
County of _____

I certify that I know or have satisfactory evidence that _____

_____ is/are the person(s) who appeared before me and acknowledged that he/she/they signed this instrument, and acknowledged it to be his/ her/their free and voluntary act for the uses and purposes mentioned in the instrument.

_____    _____
Dated                        My Commission Expires

_____
Printed Name of Notary Public

_____
Signature of Notary Public

*Note: Signature of Owner must be notarized if lease is for more than one year.*

```
┌─────────────────────────────────────┐
│                                     │
│                                     │
│                                     │
│                                     │
│                                     │
└─────────────────────────────────────┘
```
*(Use above space for notary stamp/seal)*

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2). Should the Owner serve any notice authorized by RCW 59.12, the Resident will pay $25 as a service fee for each and every notice served. This service fee shall be payable as additional rent with any other monies owed within the time frame specified on the current notice that were served or the resident will be considered in default of the Lease Contract and the Owner shall proceed with legal action. Maximum of 2 guests per resident in any common area.

*Jennifer Schultz*    *Mickell Rigsby*

© 2020, National Apartment Association, Inc.    Washington/National Apartment Association Official Form, August 2020    Page 9 of 9



# Rent Addendum

**Resident Name(s):** Jennifer Schultz

**Lease Start Date:** 01/04/2021                    **Unit No.:** R-302

Resident shall be charged the amount of $ 1407.00 , covering either (as applicable): (i) rent and other charges (identified below) from the commencement date of this Lease through the end of the calendar month in which the Lease commences, if the commencement of the term is prior to the twentieth (20th) day of the calendar month; or (ii) rent and other charges (identified below) from the commencement of this lease through the end of the first full calendar month of this Lease if the commencement date of the term is on or after the twentieth (20th) day of the calendar month.

Beginning with the first day of the next calendar month of the term of this Lease and continuing throughout the term of this Lease (including any month-to-month renewal), Resident shall pay the following amount per month payable in advance and without demand on or before the first day of each month with *no grace period*:

| | |
|---|---|
| Base Monthly Rent | $ 1382.00 |
| Less Monthly Concession Amount | $ 0.00 |

Concession Description:

| | |
|---|---|
| **Base Monthly Payment after Concession** | $ |
| **Other Monthly Charges:** | $ |
| Laundry Equipment | $ |
| Washer Serial No. | |
| Dryer Serial No. | |
| Additional Monthly Rent for Animal | $ |
| Trash | $ |
| Other | $ |
| Other | $ |
| Other | $ |
| Other | $ |
| Other | $ |
| Tax (if applicable) | $ |
| **Total Monthly Rent and Other Charges after Concession (the "Rent)** | $ 1407.00 |

**SPECIAL PROVISIONS:**

All Monthly rental payments must be made by one check, not multiple checks. Partial payment of rent is not acceptable at any time; all payments must be made in full to include all amounts due. Post-dated or third party checks will not be accepted. Payment made to the office will not be held at the request of anyone; all payments made to the office will be directly deposited. All payments made after (2) NSF's must be in the form of cashier's check or money order.

*Jennifer Schultz    Mickell Rigsby*

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716



**Resident(s) Name:** Jennifer Schultz

**Lease Start Date:** 01/04/2021                **Apartment No.:** R-302

**Rent Concession:** Resident acknowledges that Residents' right to receive a Concession detailed above is conditional upon Residents' full, complete and timely performance of all obligations under this Lease and the documents pertaining to this Lease. If Resident fails to pay Rent on or before the first day of each month pursuant to the terms of this Lease during any month of this Lease term, in addition to any other rights or remedies, the Owner has as a result of Residents' default, Resident shall not be entitled to the prorated portion of the Concession attributed to that month and Resident shall owe the full amount of rent as stated in this Lease for that month (as if no concession was given) plus any applicable late charges as a result of Residents' failure to timely pay rent in the event the resident is asked to leave, is evicted or moves out prior to the expiration of this Lease or any applicable renewal period, Resident shall pay to Owner, upon demand, the full amount of the Concession in addition to any other rent, fees, charges or expenses Resident is required to pay under this Lease as a result of Residents' failure to comply with the terms of this Lease. Resident acknowledges that the Concession constitutes a discount of Rent only and not a discount of any other charges which Resident may be required to pay pursuant to the terms of this Lease.

**Month to Month Charge:** This Lease Contract will automatically renew month-to-month unless either party gives at least _____ days written notice of termination or intent to move-out as required by paragraph _____ (Move-Out Notice). Once the lease contract has been renewed on a Month-to-Month basis either party is required to give at least _____ days written notice of termination of intent to vacate to move-out. A month-to-month charge in the amount of $_____ will be due in addition to the below stated monthly rental rate while the Resident continues on a month-to-month lease. Communities utilizing a yield management pricing tool will pull a new Quote Rate for the apartment at the time of notice and charge that current rental rate.

_____

**Owner Representative**

_____

_____

_____

**Resident(s) Signature**



JS000172



This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

LEASE ADDENDUM FOR RENT CONCESSION
OR OTHER RENT DISCOUNT



1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____, 16801 E Mission
Parkway _____
_____ (street address) in
_____ Spokane Valley _____
(city), Washington, _____ 99216 ____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head
_____
_____
_____

Residents (list all residents):
Jennifer Schultz
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **CONCESSION/DISCOUNT AGREEMENT.** As consideration for your agreement to remain in your dwelling and to fulfill your Lease obligations throughout the full term of your Lease, you will receive the following rent Concession and or Discount.

*(Check all that apply)*

☐ **One-Time Concession.** You will receive a One-Time Concession off the rent indicated in the Rent and Charges paragraph of the Lease Contract in the total amount of $ _____ 0.00 _____.This Concession will be credited to your rent due for the month(s) of: _____
_____
_____
_____.

☐ **Monthly Discount/Concession.** The rent indicated in the Rent and Charges paragraph of the Lease Contract includes a Monthly Discount of $ _____ 0.00 _____ per month off of the suggested rental rate for your dwelling.

☐ **Other Discount/Concession.** You will receive the following discount off the rent indicated in Paragraph 6 of the Lease Contract:
_____
_____
_____
_____
_____

☐ **Non-Monetary Concession.** You will receive the following non-monetary concession during the term of the Lease.
_____
_____
_____
_____
_____

4. **CONCESSION CANCELLATION AND CHARGE-BACK.** The concession and discounts indicated above are provided to you as an incentive and with the understanding that you will fulfill your obligations under the Lease Contract through the entire term of your Lease.

If you fail to pay your initial move in charges, or those payments are returned for any reason, your concession will immediately terminate, and you will be responsible for any amounts to which the concession was applied.

If your lease is terminated early due to your default (for example, if you abandon the premises without paying rent or are evicted), this Concession/Discount Agreement will be immediately terminated, and you will be required to immediately repay to the Owner the amounts of all *(Check all that apply)*

☒ Concessions
☐ Discounts

that you have actually received for the months you resided in the Premises, and without further notice from us.

5. **MARKET RENT.** The market rent for this dwelling is the rent stated in the NAA Lease Contract. You acknowledge that the market rent is a fair representation of what the specific dwelling would actually rent for at the time the Lease Contract was negotiated and executed, and is reflective of the rent for a similar dwelling at comparable properties.

6. **SPECIAL PROVISIONS.** The following special provisions control over any conflicting provisions of this printed Addendum form or the Lease Contract:

Concession must be paid back in full if
resident elects a contract buy-out and/or
does not complete lease contract.
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign)*

_____
_____
_____



**Owner or Owner's Representative**
*(Signs here)*

_____

**Date of Lease Contract**

January 4, 2021
_____

©2019, National Apartment Association, Inc. - 2/2019, Washington

**LEASE CONTRACT BUY-OUT AGREEMENT**

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____R-302_____, 16801 E Mission Parkway _____ (street address) in _____Spokane Valley_____ (city), Washington, ___99216___ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: __January 4, 2021__
   Owner's name: __River House at the Trail Head__
   _____
   _____
   _____
   Residents (list all residents):
   __Jennifer Schultz__
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

3. The purpose of this Buy-Out Agreement is to give you the right to buy out of your Lease Contract early—subject to any special provisions in paragraph 9 below. In order to buy out early, your notice must be signed by all residents listed in paragraph 1 of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

4. **BUY-OUT PROCEDURES.** You may buy out of the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term if all of the following occur:
   (a) you give us written notice of buy-out at least ___30___ days prior to the new termination date (i.e., your new move-out date), which (check one) ☐ must be the last day of a month or ☒ may be during a month (if no number is entered, then the default is 30 days notice);
   (b) you specify the new termination date in the notice, i.e., the date by which you'll move out;
   (c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;
   (d) you are not in default under the Lease Contract on the new termination date (move-out date);
   (e) you move out on or before the new termination date and do not hold over;
   (f) you pay us a buy-out fee (consideration) of $ ___2864.00___;
   (g) you pay us the amount of any concessions you received when signing the Lease Contract on the date that you give notice to buy out;
   (h) you are current in the payment of rent and all other amounts owing under the lease through the terminating date;
   (i) you comply with any special provisions in paragraph 9 below; and
   (j) if you choose to exercise the buy-out provision, and the unit re-rented at any time, you understand and agree that you are not eligible for, nor will receive any refund of any portion of the buy-out fee.

5. **WHEN PAYABLE.** The buy-out fee in paragraph 4(f) is due and payable no later than ___30___ days after you give us your buy-out notice. If no number is written in, the default shall be seven (7) days. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire lease term is $ ___0.00___ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

6. **SHOWING UNIT TO PROSPECTIVE RESIDENTS.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

7. **COMPLIANCE ESSENTIAL.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically; and (1) any amounts you have paid under this agreement will become part of your security deposit, and (2) the lease will continue without buy-out. Then, if you move out early, you are subject to all lease remedies, including reletting fees and liability for all rents for the remainder of the original lease term.

8. **MISCELLANEOUS.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the dwelling unit to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

9. **SPECIAL PROVISIONS.** Your right of buy-out (check one) ☐ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if the following facts (see below) occur and any described documents are furnished to us. Any special provisions below will supersede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

*Jennifer Schultz    Mickell Rigsby*

JS000174

©2018, National Apartment Association, Inc. - 9/2018, Washington

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

Date of Lease Contract

January 4, 2021

*Jennifer Schultz   Michell Rigsby*

JS000175

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018,

**UTILITY AND SERVICES ADDENDUM**

 NAA NATIONAL APARTMENT ASSOCIATION

This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated __January 4, 2021__ between __River House at the Trail Head__

("We" and/or "we" and/or "us") and __Jennifer Schultz__

"You" and/or "you") of Apt. No. ____ __R-302__ located at __16801 E Mission Parkway__

(street address) in __Spokane Valley, WA 99216__ and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.
   a) **Water** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: __8__
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☒ 3rd party billing company if applicable __Conserve__
   b) **Sewer** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: __8__
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☒ 3rd party billing company if applicable __Conserve__
   c) **Gas** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   d) **Trash** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ trash bills will be billed by the service provider to us and then allocated to you based on the following formula: __5__
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☒ 3rd party billing company if applicable __Conserve__
   e) **Electric** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   f) **Stormwater** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   g) **Cable TV** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   h) **Master Antenna** service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   i) **Internet** service to your dwelling will be paid by you either:
      ☒ directly to the utility service provider; or
      ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☐ 3rd party billing company if applicable _____
   j) (Other) __Common Area Electric and Gas__ service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: __7__
         ☐ If flat rate is selected, the current flat rate is $ _____ per month.
         ☒ 3rd party billing company if applicable __Conserve__
   k) (Other) __Pest Control__ service to your dwelling will be paid by you either:
      ☐ directly to the utility service provider; or
      ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: __4__
         ☒ If flat rate is selected, the current flat rate is $ __1.00__ per month.
         ☒ 3rd party billing company if applicable __Conserve__

METERING/ALLOCATION METHOD KEY
"1" - Sub-metering of all of your water/gas/electric use
"2" - Calculation of your total water use based on sub-metering of hot water
"3" - Calculation of your total water use based on sub-metering of cold water
"4" - Flat rate per month
"5" - Allocation based on the number of persons residing in your dwelling unit
"6" - Allocation based on the number of persons residing in your dwelling unit using a ratio occupancy formula
"7" - Allocation based on square footage of your dwelling unit
"8" - Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit
"9" - Allocation based on the number of bedrooms in your dwelling unit
"10" - Allocation based on a lawful formula not listed here
   (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

*Jennifer Schultz* JS000176

© 2018, National Apartment Association, Inc. - 9/2018, Washington

2. If an allocation method is used, we or our billing company will provide your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within _____ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | | |
|---|---|---|
| New Account Fee: | $ 10.00 | (not to exceed $ _____ ) |
| Monthly Administrative Billing Fee: | $ 3.99 | (not to exceed $ _____ ) |
| Late Fee: | $ _____ | (not to exceed $ _____ ) |
| Final Bill Fee: | $ 5.00 | (not to exceed $ _____ ) |

If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $ 50.00 .

5. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations.

7. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Utility Addendum and at law.

8. Where lawful, all utilities, charges and fees of any kind under this Lease shall be considered additional rent, and if partial or full payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

9. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify in writing Owner of any change in such number of occupants.

10. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

11. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

12. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract. Electricity must be transferred into residents name no later than the day of move-in. If the leasing office receives the residents bill, the charges will be added to the residents ledger. Per section 4, $50.00 vacant recovery fee when applicable.

Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Resident Signature _____    Date _____
Management _____    Date _____

*Jennifer Schultz    Mishell Rigsby*

JS000177

© 2018, National Apartment Association, Inc.    .    Washington/National Apartment Association Official Form, September 2018    Page 2 of 2



# LEASE ADDENDUM
## LIABILITY INSURANCE REQUIRED OF RESIDENT

1. **Addendum.** This is an addendum to the Lease Contract between you and Owner.

2. **Acknowledgment Concerning Insurance or Damage Waiver.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that paragraph 8 of the Lease Contract requires You to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ 100,000 per occurrence. You will ensure that the liability insurance policy identifies this apartment community, C/O Avenue5, P.O. Box 979138, Miami, FL 33197-9138 as a "Party of Interest" or "Interested Party" (or similar language as may be available). You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods, a policy of personal liability insurance with this limit and otherwise satisfying the requirements listed below, at your sole expense.

3. **Required Policy.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third-parties (including damages to our property), with the minimum policy coverage amount set forth in paragraph 2 above, from a carrier with an AM Best rating of A-VII or better, authorized to issue such insurance in (state). The Carrier must provide notice to us within 30 days of any cancellation, non-renewal, or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

4. **No Solicitation.** Unless otherwise acknowledged in writing, you acknowledge that we have made no solicitations, guarantees, representations, or promises whatsoever concerning any insurance or services provided by any insurance company. You were and are free to contract for the required insurance with the provider of

your choosing so long as that provider comports with the requirements of paragraph 3 above.

5. **Subrogation Allowed.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language to the contrary in the Lease Contract. Accordingly, our insurance carrier may sue you for losses it pays as a result of your negligence, and your insurance carrier may sue us for losses it pays as a result of our negligence.

6. **Your Insurance Coverage.** By signing this addendum, you acknowledge that you have purchased (or will purchase) the insurance described in paragraphs 2 and 3, and that you will provide written proof of this insurance to on-site staff prior to taking possession of the apartment. You further acknowledge that you will keep this insurance policy in-force for the entire term of the lease and provide written proof of active renter's liability coverage upon request. If any material terms of your insurance policy change, you agree to promptly provide proof of the modified policy terms to the on-site staff. For the purposes of this paragraph, either the written policy itself or the declaration page to the policy shall constitute written proof.

7. **Default.** Unless otherwise prohibited by law, any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law. If you allow your outside policy to expire or cancel, you will be in default under the terms of your lease. If you fail to provide written proof of insurance as required by paragraph 6, we reserve the right to procure coverage to address the deficiency and you agree to reimburse us for the cost of such insurance. The monthly insurance charge is due in full each month with your rental payment. The insurance carrier will issue a policy to you via mail, naming you as the certificate holder or as the insured party. You will also receive a policy in the mail as evidence of your enrollment into the program. We may continue to charge you for such insurance coverage until such time as you provide proof of insurance pursuant to paragraph 6.

8. **Miscellaneous.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

## IMPORTANT DISCLOSURES – READ CAREFULLY BEFORE SIGNING

1. The insurance required by the Lease Contract is not required by any law. Your obligation to provide insurance stems solely from the Lease Contract.
2. The insurance required by the Lease is not an attempt to limit the Owner's liability for its own negligence or your liability for your own negligence.
3. Owner may be receiving remuneration from insurance companies where permitted by law. Avenue5 Insurance LLC, a licensed affiliate of the property manager, may also receive compensation on policies issued by some insurance companies for administrative or marketing support.
4. The insurance required by the Lease Contract is not in lieu of, or in any way a component of, the security deposit required by the Lease Contract.
5. You understand that every term of the agreement between you and the Owner is set forth in the Lease Contract, any addenda thereto, and in the Rules and Regulations which collectively constitute the entire agreement between you and the Owner. There are no other terms except those which may be implied by law.
6. You agree that you have not received any oral representations from Owner or any representative of Owner which are inconsistent with or not contained in the Lease Contract, the addenda attached to the Lease Contract, or in the Rules and Regulations. If you have received any such oral representations, you agree that you did not rely on them to decide to enter in the Lease Contract or this Addendum.
7. You understand that the liability-only insurance we may procure on your behalf in the event of your default may cost more than similar insurance you can purchase on your own. You also understand that this liability-only insurance purchased on your behalf is limited in scope and may not fully protect your interests.
8. If Avenue5 Residential LLC no longer manages this community in the future, the liability insurance may terminate and may not transfer to the new management company. Regardless, the insurance company will provide you notice of such occurrence.

Resident or Residents
*[All residents must sign here]*

Owner or Owner's Representative
*[signs here]*

Date of Lease Contract
01/04/2021



Revised 6/5/2017

JS000178





## POINT OF LEASE ADDENDUM
## LIABILITY INSURANCE REQUIRED OF RESIDENT

To satisfy this requirement, you may provide your own insurance coverage by purchasing an annual term policy from an insurance agent or insurance carrier of your choice and providing us with a copy of the policy prior to move-in.

If you choose not to purchase your own insurance coverage, you have the option to obtain coverage under a group liability insurance policy issued by an insurance carrier we have partnered with. As a resident of this property, you automatically qualify for this coverage with no underwriting or credit application. Participation in this program allows you to conveniently pay the insurance charges with your monthly rent.

**Please initial one of the boxes below indicating how you will meet the lease's insurance requirement.**

_____ I have purchased an annual term renter's insurance policy from the carrier of my choice and have provided a copy or other satisfactory evidence to the leasing representative.

      Insurance Provider: _____

      Policy Number: _____

      Policy Expiration Date: <u>01/05/2021</u>_____

_____ I have not purchased an annual term policy and agree to participate in the group insurance program (Point of Lease Insurance) that meets the lease's insurance requirement. I understand that I will be billed a $14.50 monthly charge with my rent to cover the costs of securing coverage. The insurance company will issue and send a certificate of insurance to me that will fully describe the limits, conditions and terms of the coverage provided. I have been provided the insurance company's brochure and/or website that describes the general terms of this group insurance program, and I hereby agree to and accept such terms. I understand that Point of Lease Insurance covers my personal liability and includes $10,000 of coverage for my personal property.

### IMPORTANT DISCLOSURES – READ CAREFULLY BEFORE SIGNING

1. If you have an annual renter's insurance policy and decide to switch to the Point of Lease Insurance, please compare the terms of coverage between the two policies, as not all policies are the same and coverage may differ.

2. If we no longer manage this community in the future, the Point of Lease Insurance may terminate and may not transfer to the new management company. Regardless, the insurance company will provide you notice of such occurrence. To maintain coverage after this occurs, you are strongly encouraged to purchase renter's insurance through the carrier or agent of your choice.

3. By providing certain marketing and administrative functions on behalf of the insurance carrier, the Property Owner (or one of its affiliates) may have a financial interest in placement of insurance under the above-described group program.

*Jennifer Schultz    Mickell Rigsboy*



## ELECTRONIC PAYMENTS ADDENDUM OR/WA

DATE <u>01/04/2021</u>    PROPERTY NAME/NUMBER <u>River House at the Trail Head</u>
RESIDENT NAME(s) <u>Jennifer Schultz</u>
UNIT NUMBER <u>R-302</u>    STREET ADDRESS <u>16801 E Mission Parkway</u>
CITY <u>Spokane Valley</u>    STATE <u>WA</u>    ZIP <u>99216</u>

This Addendum constitutes an Addendum to that Rental Agreement entered into by and between the Landlord and Tenant on <u>01/04/2021</u>    (date) for the premises commonly known as <u>16801 E</u> <u>Mission Parkway, Spokane</u> (address) at <u>River House at the Trailhead</u>    Apartments. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Rental Agreement, this Addendum shall control.

All amounts due Landlord are payable to <u>River House at the Trail Head</u>
_____ [*name of person or entity, street address and telephone number*]. Payment must be made by: **ACH (details below)** or [X] Cashiers Check [X] Money Order

The normal hours available to make payments in person are from <u>8:30 am</u>    to <u>5 pm</u>    , on all non-holiday [X] Weekdays, <u>10 am</u>    to <u>5 pm</u>    on Saturdays, and _____ to _____ on Sundays. [ ] *(If checked)* A twenty-four hour, seven days a week rent payment drop box is available at the address above.

**PAYMENT BY "ACH" DEBIT IS STRONGLY ENCOURAGED:** Landlord strongly encourages that Tenant make all payments of rent, together with any utility charges and/or other charges, of any nature whatsoever, by Automated Clearing House ("ACH") debit.

**AUTOMATIC DEBIT FORM:** If Tenant wants to make payments by ACH, Resident will complete an automatic debit form provided by Landlord authorizing Landlord to establish arrangements for the transfer of payments from Resident to Landlord by ACH debit(s) initiated by Landlord from an account in the name of Resident established at a United States bank.

**TIMING OF PAYMENT:** For purposes of determining the timing of Resident's ACH payment(s) to Landlord, Resident shall be deemed to have paid Landlord upon receipt of the Resident's funds in Landlord's bank account.

**REFUSAL OF TENDER(S):** Notwithstanding the foregoing ACH debit (payment) procedures, Landlord may, at its sole option, refuse any amount tendered by Resident (a) that is or has been tendered late, (b) that constitutes a partial payment of debts, (c) constitutes a payment of rent past any existing termination date, and/or (d) for any other lawful reason whatsoever.

**DEFAULT BY RESIDENT:** In the event that Landlord is unable, through no fault of Landlord or its bank, to successfully receive and/or process any ACH debit hereunder, Resident shall be deemed not to have paid Landlord, and Landlord shall be deemed not to have received, such payment from Resident. If, for any reason, an ACH debit is later returned for nonsufficient funds, or for any other reason, Resident shall be deemed to have defaulted in the tender of said debit/payment. If any electronic payment to Landlord is declined, reversed or results in a "charge back," Tenant will be responsible for the full

*Jennifer Schultz*    *Mickell Rigsby*

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716



amount of the unpaid amount, late fees and any additional cost to Landlord.  Additionally, Landlord will retain all rights and remedies, including the right to terminate Tenant's tenancy.

Occupant: __Jennifer Schultz_____

By: _____
  (Occupant Signature)

Date: _____


Occupant: _____

By: _____
  (Occupant Signature)

Date: _____


Landlord: _____

By: _____
  (Authorized Signature)

Date: _____


Occupant: _____

By: _____
  (Occupant Signature)

Date: _____


Occupant: _____

By: _____
  (Occupant Signature)

Date: _____

*Jennifer Schultz*   *Mickell Rigsby*

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

**RESIDENT PARKING ADDENDUM**

**NAA**
NATIONAL APARTMENT ASSOCIATION

Date: _____ January 4, 2021 _____
(when this Addendum is filled out)

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____, 16801 E Mission Parkway _____
_____ (street address) in
_____ Spokane Valley _____
(city), Washington, ___ 99216 ___ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head
_____
_____
_____
_____

Residents (list all residents):
Jennifer Schultz _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The term of this Parking Addendum is as follows:
Begins on _____ January 4th _____, ___ 2021 ___ and
ending on _____ March 3rd _____, ___ 2022 ___.

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**RESIDENT AND OWNER AGREE AS FOLLOWS:**

3. You agree to properly register all vehicles with management. If you get a new or replacement vehicle you must notify us and complete a revised agreement. If you fail to do so, your unregistered vehicle may be towed at your sole expense.

4. If you are provided with a parking tag or sticker it must be properly installed and displayed, and any vehicle without a properly displayed tag or sticker is subject to tow.

5. Unless your vehicle(s) has been assigned a specific space(s) you may park in any available space(s) in the parking areas, with the exception of spaces reserved for a particular use or any marked handicap space, unless you posses a government issued handicap decal or similar signage.

6. If you are assigned a specific parking space(s) we shall assign you the space(s) and retain the right to change assigned spaces at our sole discretion with thirty (30) days written notice, even during a lease term.

7. You understand and accept that we have the right at any time, without notice, to tow unauthorized or non-registered vehicles from any parking space on the property.

8. You agree to use parking spaces in accord with the terms of the Lease and Community Rules.

9. Any vehicles which are improperly parked or are in violation of this addendum, the terms of the Lease or Community Rules will be towed at your expense. You agree that, to the greatest extent allowed by law, we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

10. Parking spaces may not be used for storage of vehicles. Your vehicle(s) must be moved every _____ days, including vehicles parked in all guest or handicapped spaces. If you have a reserved parking space, or a garage, you are required to use that space, or your garage, first.

11. You understand that we will not be held liable for any damage or theft that may occur while your vehicle(s) is parked on any part of the property. Upon signing this agreement you knowingly accept the risk of parking any vehicle(s) on the property.

12. Any action by you, any occupant, guest, or visitor that violates this addendum shall constitute a material violation of the Lease Contract.

13. You understand and agree that any judgment of possession entered against you shall be a judgment for possession of any parking spaces which you are entitled to under this addendum. Once such judgment is rendered and executed upon you, you shall immediately remove all vehicles from the property parking areas. If you fail to remove your vehicle(s), we shall tow the vehicle(s) at your expense. You agree that we shall not be liable to you for damages related to the physical towing nor any consequential damages you may incur through loss of use of the vehicle(s).

**COST FOR PARKING:**

Resident agrees to pay a onetime fee of $ _____ per vehicle on or before the _____ day of _____. In alternative resident agrees to pay $ _____ monthly per vehicle due on or before the _____ day of the month. If no amount is filled in parking shall be free for properly registered and authorized vehicles.

Resident understands and accepts that all-parking rights and privileges will immediately be revoked in the case that Resident is _____ days delinquent in paying the required parking fee.

Resident agrees to pay $ __35.00 __ NSF fee for all checks returned for non-sufficient funds.

**VEHICLE INFORMATION:**

**Vehicle 1**
Make: Kia _____
Model & Year: Optima 2014 _____
State: WA _____
License Plate: Axt _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 2**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

**Vehicle 3**
Make: _____
Model & Year: _____
State: _____
License Plate: _____
Permit Number: _____
Phone Number: _____
Parking Space: _____

*Jennifer Schultz*   *Mickell Rigsby*

JS000182

**14. SPECIAL PROVISIONS.**

We reserve the right to immediately tow
any vehicles illegally parked and/or
parking in a reserved parking space.
Parking in front of the leasing office is
open after 6:00PM to 8:00AM. We reserve
the right to tow any resident/guest cars
in future resident parking from 8:01AM to
5:59PM

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

**Date of Signing Addendum**

*Jennifer Schultz    Mitchell Rigsby*

JS000183

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018.

**LEASE CONTRACT ADDENDUM FOR
ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT**

**NAA**
NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.**
Unit No. ___R-302___, _16801 E Mission Parkway_
_____ _(street address)_ in
_____Spokane Valley_____
_(city)_, Washington, ___99216___ _(zip code)_.

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: _January 4, 2021_
Owner's name: _River House at the Trail Head_
_____
_____
_____
_____

Residents _(list all residents)_:
_Jennifer Schultz_
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **GARAGE, CARPORT, OR STORAGE UNIT.** You are entitled to exclusive possession of: _(check as applicable)_
☐ garage or carport attached to the dwelling;
☐ garage space number(s) _____ ;
☐ carport space number(s) _____; and/or
☐ storage unit number(s) _____ .
All terms and conditions of the Lease Contract apply to the above areas unless modified by this addendum.

4. **SECURITY DEPOSIT.** An additional security deposit of $ _____ will be charged for the checked areas above. We will consider this additional security deposit part of the general security deposit for all purposes. The security deposit amount in the Security Deposit paragraph of the Lease Contract _(check one)_ ☐ does or ☒ does not include this additional deposit amount. This deposit is a general deposit and is not limited in use to damages caused within the checked areas above, and is subject to forfeiture as a general deposit.

5. **ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in Paragraph 6 of the Lease Contract) will be increased by $ ____0.00____ . The monthly rent amount in the Rent and Charges paragraph of the Lease Contract _(check one)_ ☐ includes ☒ does not include this additional rent.

6. **USE RESTRICTIONS.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the Lease Contract may not use the areas covered by this Addendum. No plants may be grown in such areas.

7. **NO DANGEROUS ITEMS.** Items that pose an environmental hazard or a risk to the safety or health of other residents, occupants, or neighbors in our sole judgment or that violate any government regulation may not be stored. Prohibited items include fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

8. **NO SMOKE, FIRE, OR CARBON MONOXIDE DETECTORS.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

9. **GARAGE DOOR OPENER.** If an enclosed garage is furnished, you ☒ will ☐ will not be provided with a ☒ garage door opener and/or ☐ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

10. **SECURITY.** Always remember to lock any door of a garage or storage unit and any door between a garage and the dwelling. When leaving, be sure to lock all keyed deadbolt locks.

11. **INSURANCE AND LOSS/DAMAGE TO YOUR PROPERTY.** You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We are not responsible for pest control in such areas.

12. **COMPLIANCE.** As allowed by law, we may periodically open and enter garages and storerooms to ensure compliance with this Addendum. In the event we enter the garage or storerooms, we will comply with the notice provisions set forth in the Lease Contract.

13. **NO LOCK CHANGES, ALTERATIONS, OR IMPROVEMENTS.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this Addendum will be paid for by you.

14. **MOVE-OUT AND REMEDIES.** Any termination of tenancy shall automatically terminate any right of storage or parking without further notice required. Any items remaining after you have vacated the dwelling will be removed, sold, or otherwise disposed of according to the Lease Contract, which addresses disposition or sale of property left in an abandoned or surrendered dwelling. All remedies in the Lease Contract apply to areas covered by this addendum.

_Jennifer Schultz_    _Mickell Rigsby_

JS000184

©2018, National Apartment Association, Inc. - 9/2018, Washington

Page 1 of 2

**15. SPECIAL PROVISIONS.**   The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

_____
_____
_____
_____
_____
_____

**Date of Lease Contract**

January 4, 2021

*Jennifer Schultz    Mickell Rigsby*

JS000185

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018.

**LEASE ADDENDUM**
**FOR REMOTE CONTROL, CARD, OR CODE ACCESS GATE**

NAA
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____R-302_____, 16801 E Mission Parkway _____ (street address) in _____Spokane Valley_____ (city), Washington, ____99216____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head

Residents (list all residents):
Jennifer Schultz

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **REMOTE CONTROL/CARDS/CODE FOR GATE ACCESS.**
   ☒ **Remote control for gate access.** Each person who is listed as a resident on the lease will be given a remote control at no cost to use during his or her residency. Each additional remote control for you or other occupants will require a $ _____75.00_____ non-refundable fee.

   ☒ **Cards for gate access.** Each person who is listed as a resident on the lease will be given a card at no cost to use during his or her residency. Each additional card for you or other occupants will require a $ ____75.00____ non-refundable fee.

   ☐ **Code for gate access.** Each resident will be given, at no cost, an access code (keypad number) for the pedestrian or vehicular access gates. It is to be used only during your residency. We may change the access code at any time and will notify you of any such changes.

4. **DAMAGED, LOST OR UNRETURNED REMOTE CONTROLS, CARDS OR CODE CHANGES.**
   ☐ If a remote control is lost, stolen or damaged, a $ _____ fee will be charged for a replacement. If a remote control is not returned or is returned damaged when you move out, there will be a $ _____ deduction from the security deposit.

   ☐ If a card is lost, stolen or damaged, a $ _____ fee will be charged for a replacement card. If a card is not returned or is returned damaged when you move out, there will be a $ _____ deduction from the security deposit.

   ☐ We may change the code(s) at any time and notify you accordingly.

5. **REPORT DAMAGE OR MALFUNCTIONS.** Please immediately report to the office any malfunction or damage to gates, fencing, locks or related equipment.

6. **FOLLOW WRITTEN INSTRUCTIONS.** We ask that you and all other occupants read the written instructions that have been furnished to you regarding the access gates. This is important because if the gates are damaged by you or other occupants, guests or invitees through negligence or misuse, you are liable for the damages under your lease, and collection of damage amounts will be pursued.

7. **PERSONAL INJURY AND/OR PERSONAL PROPERTY DAMAGE.** Except as specifically required by law, we have no duty to maintain the gates and cannot guaranty against gate malfunctions. We make no representations or guarantees to you concerning security of the community. Any measures, devices, or activities taken by us are solely for the benefit of us and for the protection of our property and interests, and any benefit to you of the same is purely incidental. Anything mechanical or electronic is subject to malfunction. Fencing, gates or other devices will not prevent all crime. No security system or device is foolproof or 100 percent successful in deterring crime. Crime can still occur. Protecting residents, their families, occupants, guests and invitees from crime is the sole responsibility of residents, occupants and law enforcement agencies. You should first call 911 or other appropriate emergency police numbers if a crime occurs or is suspected. We are not liable to any resident, family member, guest, occupant or invitee for personal injury, death or damage/loss of personal property from incidents related to perimeter fencing, automobile access gates and/or pedestrian access gates. We reserve the right to modify or eliminate security systems other than those statutorily required. You will be held responsible for the actions of any persons to whom you provide access to the community.

8. **RULES IN USING VEHICLE GATES.**
   - Always approach entry and exit gates with caution and at a very slow rate of speed, and wait for gate to stop moving before proceeding under it.
   - Never stop your car where the gate can hit your vehicle as the gate opens or closes.
   - Never follow another vehicle into an open gate. Always use your card to gain entry.
   - Report to management the vehicle license plate number of any vehicle that piggybacks through the gate.
   - Never force the gate open with your car.
   - Never get out of your vehicle while the gates are opening or closing.
   - If you are using the gates with a boat or trailer, please contact management for assistance. The length and width of the trailer may cause recognition problems with the safety loop detector and could cause damage.
   - Do not operate the gate if there are small children nearby who might get caught in it as it opens or closes.
   - If you lose your card, please contact the management office immediately.
   - Do not give your card or code to anyone else.
   - Do not tamper with gate or allow your occupants to tamper or play with gates.

Jennifer Schultz   Mitchell Rigsbey

JS000186

©2018, National Apartment Association, Inc. - 9/2018, Washington

Page 1 of 2

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

If key fob is lost/stolen/broken there is
an $75.00 replacement charge or if key fob
is not returned at move out, account will
be charged $75.00. Access code is
confidential and is not permitted to be
given out to anyone. Only lessee on the
lease contract are permitted to use access
code to clubhouse/bike barns/pool. If we
feel the code is compromised in anyway, we
reserve the right to deactivate key fob
and access code. You are responsible to
ensure the doors are secured when you
enter and leave a controlled access area.

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

**Date of Lease Contract**

January 4, 2021

*Jennifer Schultz    Mickell Rigsboy*

JS000187

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018.



**ANIMAL ADDENDUM**

*Becomes part of Lease Contract*

Date: **January 4, 2021**
(when this Addendum is filled out)

> *Please note: We consider animals a serious responsibility and a risk to each resident in the dwelling. If you do not properly control and care for your animal, you'll be held liable if it causes any damage or disturbs other residents.*

*In this document, the terms "you" and "your" refer to all residents listed below and all occupants or guests; and the terms "we," "us," and "our" refer to the owner named in the Lease Contract (not to the property manager or anyone else).*

1. **DWELLING UNIT DESCRIPTION.**
Unit No. **R-302**    **16801 E**
**Mission Parkway**
_____ *(street address)* in
**Spokane Valley**
*(city)*, Washington, _____ **99216** _____ *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **January 4, 2021**
Owner's name: **River House at the Trail Head**
_____
_____
_____
_____

Residents *(list all residents):*
**Jennifer Schultz**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **A.** ☐ **NO APPROVED ANIMALS.** If this box is checked, you are not allowed to have animals (including mammals, reptiles, birds, fish, rodents, and insects), even temporarily, anywhere in the apartment or apartment community unless we've authorized so in writing. We will authorize support and/or service animals for you, your guests, and occupants pursuant to the parameters and guidelines established by the Federal Fair Housing Act, HUD regulatory guidelines, and any applicable state and/or local laws.

**B.** ☐ **CONDITIONAL AUTHORIZATION FOR ANIMAL.** If this box is checked, you may keep the animal that is described below in the dwelling until the Lease Contract expires. But we may terminate this authorization sooner if your right of occupancy is lawfully terminated or if in our judgment you and your animal, your guests, or any occupant violate any of the rules in this Addendum.

4. **ANIMAL DEPOSIT.** An animal deposit of $ _____ **0.00** _____ will be charged. We will consider this additional security deposit the general security deposit for all purposes. The security deposit amount in the Security Deposit paragraph of the Lease Contract *[check one]* ☐ *does,* or ☐ *does not include* this additional deposit amount. This deposit is a general deposit and is not limited in use to damages caused by the animal(s) listed in this Addendum, and is subject to forfeiture as a general deposit. If the animal(s) become an assistive animal(s) during your tenancy, this deposit will be held for the duration of the tenancy.

5. **ADDITIONAL MONTHLY RENT.** Your total monthly rent (as stated in the Lease Contract) will be increased by $ _____ **0.00** _____. The monthly rent amount in the Rent and *Jennifer Schultz* ___ paragraph of the Lease Contract *[check one]* ☐ *includes* ☒ *does not include* this additional animal rent.

6. **ADDITIONAL FEE.** You must also pay a one-time non-refundable, fee of $ _____ **0.00** _____ for having the animal in the dwelling unit. It is our policy to not charge a deposit for support animals.

7. **LIABILITY NOT LIMITED.** The additional monthly rent and additional security deposit under this Animal Addendum do not limit residents' liability for property damages, cleaning, deodorization, defleaing, replacements, or personal injuries.

8. **DESCRIPTION OF ANIMAL(S).** You may keep only the animal(s) described below. You may not substitute any other animal(s). Neither you nor your guests or occupants may bring any other animal(s)—mammal, reptile, bird, amphibian, fish, rodent, arachnid, or insect—into the dwelling or apartment community.

Animal's name: **NONE** _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____

_____
_____

Animal's name: _____
Type: _____
Breed: _____
Color: _____
Weight: _____ Age: _____
City of license: _____
License no.: _____
Date of last rabies shot: _____
Housebroken? _____
Animal owner's name: _____

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

**The following constitutes a list of animals, and/or breed of animals, that shall not be permitted in, on or upon any dwelling unit or common area. Animals not listed below, but which display substantially similar physical characteristics or traits to those animals listed below, shall be treated as though they had been listed below. Breeds of Dogs: Pit Bull, Rottweiler, Presa Canario, German Shepherd, Husky, Malamute, Doberman, Chow Chow, St. Bernard, Great Dane, Akita, Staffordshire Terriers, American Bull Dog, Karelian Bear Dog. Exotic Animals: Reptiles, Ferrets, Skunks, Raccoons, Squirrels, Rabbits, Birds, Pigs, Arachnids, Piranha, other farm or poisonous animals. Aquarium max 5 gallons, must be first floor, management must approve.**

*Jennifer Schultz*

JSD000188

**10. EMERGENCY.** In an emergency involving an accident or injury to your animal, we have the right, but not a duty, to take the animal to the following veterinarian for treatment, at your expense.

Doctor: _____
Address: _____
City/State/Zip: _____
Phone: _____

**11. ANIMAL RULES.** You are responsible for the animal's actions at all times. You agree to abide by these rules:

- The animal must not disturb the neighbors or other residents, regardless of whether the animal is inside or outside the dwelling.

- Dogs, cats, and service animals must be housebroken. All other animals must be caged at all times. No animal offspring are allowed.

- Inside, the animal may urinate or defecate *only* in these designated areas: **Cat litter box** _____
_____

- Outside, the animal may urinate or defecate *only* in these designated areas: **By pet stations** _____

- Animals may not be tied to any fixed object anywhere outside the dwelling units, except in fenced yards (if any) for your exclusive use.

- You must not let an animal other than service animals into swimming-pool areas, laundry rooms, offices, clubrooms, other recreational facilities, or other dwelling units.

- Your animal must be fed and watered inside the dwelling unit. Don't leave animal food or water outside the dwelling unit at any time, except in fenced yards (if any) for your exclusive use.

- You must keep the animal on a leash and under your supervision when outside the dwelling or any private fenced area. We or our representative may pick up unleashed animals and/or report them to the proper authorities. We may impose reasonable charges for picking up and/or keeping unleashed animals.

- Unless we have designated a particular area in your dwelling unit or on the grounds for animal defecation and urination, you are prohibited from letting an animal defecate or urinate *anywhere* on our property. You must take the animal off our property for that purpose. If we allow animal defecation inside the dwelling unit in this Addendum, you must ensure that it's done in a litter box with a kitty litter-type mix. If the animal defecates anywhere on our property (including in a fenced yard for your exclusive use), you'll be responsible for immediately removing the waste and repairing any damage. Despite anything this Addendum says, you must comply with all local ordinances regarding animal defecation.

**12. ADDITIONAL RULES.** We have the right to make reasonable changes to the animal rules from time to time if we distribute a written copy of any changes to every resident who is allowed to have animals.

**13. VIOLATION OF RULES.** If you, your guest, or any occupant violates any rule or provision of this Animal Addendum (based upon our judgment) and we give you written notice, you must permanently remove the animal from the premises within the time period specified in our notice. We also have

all other rights and remedies set forth in the Lease Contract, including damages, eviction, and attorney's fees to the extent allowed by law.

**14. COMPLAINTS ABOUT ANIMAL.** You must immediately and permanently remove the animal from the premises if we receive a reasonable complaint from a neighbor or other resident or if we, in our sole discretion, determine that the animal has disturbed neighbors or other residents.

**15. OUR REMOVAL OF ANIMAL.** In some circumstances, we may enter the dwelling unit and remove the animal with one day's notice left in a conspicuous place. We can do this if, in our sole judgment, you have:

- abandoned the animal;
- left the animal in the dwelling unit for an extended period of time without food or water; or
- failed to care for a sick animal;
- violated our animal rules; or
- let the animal defecate or urinate where it's not supposed to.

In doing this, we must follow the procedures of the Lease Contract, and we may kennel the animal or contact a humane society or local authority for pick up. We'll return the animal to you upon request if we haven't already turned it over to a humane society or local authority. We don't have a lien on the animal for any purpose, but you must pay for reasonable care and kenneling charges for the animal. If you don't pick up the animal within 5 days after we remove it, it will be considered abandoned.

**16. LIABILITY FOR DAMAGES, INJURIES, CLEANING, ETC.** You and all co-residents will be jointly and severally liable for the entire amount of all damages caused by the animal, including all cleaning, defleaing, and deodorizing. This provision applies to all parts of the dwelling unit, including carpets, doors, walls, drapes, wallpaper, windows, screens, furniture, appliances, as well as landscaping and other outside improvements. If items cannot be satisfactorily cleaned or repaired, you must pay for us to replace them completely. Payment for damages, repairs, cleaning, replacements, etc. are due immediately upon demand.

As owner of the animal, you're strictly liable for the entire amount of any injury that the animal causes to a person or anyone's property. You'll indemnify us for all costs of litigation and attorney's fees resulting from any such damage.

**17. MOVE-OUT.** When you move out, you'll pay for defleaing, deodorizing, and shampooing to protect future residents from possible health hazards, regardless of how long the animal was there. We—not you—will arrange for these services.

**18. JOINT AND SEVERAL RESPONSIBILITY.** Each resident who signed the Lease Contract must sign this Animal Addendum. You, your guests, and any occupants must follow all animal rules. Each resident is jointly and severally liable for damages and all other obligations set forth in this Animal Addendum, even if the resident does not own the animal.

**19. GENERAL.** You acknowledge that no other oral or written agreement exists regarding animals. Except for written rule changes under paragraph 9 above, our representative has no authority to modify this Animal Addendum or the animal rules except in writing. This Animal Addendum and the animal rules are considered part of the Lease Contract described above. It has been executed in multiple originals, one for you and one or more for us.

This is a binding legal document. Read it carefully before signing.

| Resident or Residents | Owner or Owner's Representative |
|---|---|
| *(All residents must sign)* | *(Signs below)* |

_____    _____

_____    _____

_____

*Jennifer Schultz  Mickell Ripsbury*

JS000189

©2020, National Apartment Association, Inc. - 2/2020, Washington



## ANIMAL POLICY ACKNOWLEDGEMENT

Thank you for choosing <u>**River House at the Trailhead**</u> as your new home! We are very excited to have you as part of our community. As you are aware, we are an animal friendly community and would like to take this time to confirm you fully understand our animal policies.

| | | | |
|---|---|---|---|
| Refundable Animal Deposit | $___0.00___ (first animal) | $___0.00___ (each additional animal) |
| Non-Refundable Animal Fee: | $___400.00___ (first animal) | $___400.00___ (each additional animal) |

Separate deposits may be required for each animal. Upon vacating the apartment, management shall do an inspection of the apartment and any damage attributable to the animal shall be charged to the resident accordingly.

The following are the necessary rules to be observed by animal owners residing in The Apartment Community:

a.  Animals must be on a leash when outside of premises and shall not be tied to anything outside of premises. Resident shall be limited to a maximum of animals fully grown, weighing not more than _____ **pounds**, unless otherwise given prior written permission by Owner. Animals must be approved by Owner and such approval is contingent upon Resident's observance of the foregoing conditions of this Animal Addendum and can be withdrawn at any time.

b.  When animal is acquired, an Additional Deposit, a Non-Refundable Animal Fee (if applicable in state), and a Monthly Animal Charge may be required to be paid by Resident.

c.  If Resident has more than one animal, separate additional deposits, separate Non-Refundable Animal Fees (if applicable in state) and separate Monthly Animal Charges may be required for EACH animal.

d.  Animals are to be taken on a leash away from all courtyards or any living areas to prevent sanitary as well as health problems. Resident is responsible for removal of animal's waste. Some communities may be equipped with pet waste disposal stations.

e.  Resident's living in upstairs apartments with a balcony cannot leave the animal on the balcony for extended periods of time.

f.  Patios should be kept clean of animal droppings. During hot weather, especially, odors from such can be extremely offensive to neighbors. No food is to be left outside.

g.  The Resident will be asked to remove any animal that regularly bothers Residents, whether inside or outside, or constitutes a problem or obstruction to the agents and employees of the Management or Owner from properly performing their functions, duties and responsibilities. If Resident fails to remove said animal following complaints from Residents and requests from Owner, the Resident's lease will be terminated.

h.  Because of health regulations, non-service animals are not permitted in or around the pool area, laundry rooms, or other recreational facilities.

i.  If Resident has pets, service or companion animals, they must be secured during maintenance work. If not, Maintenance shall be entitled to leave the unit prior to the completion of the work and it shall be Resident's sole responsibility to schedule the completion of the work after the animal has been secured. Maintenance reserves the right to refuse maintenance work if only a person under age 18 is present at the time of the work.

j.  If a pet/service or companion animal becomes a problem in the sole opinion of the Landlord, Landlord reserves the right to require that it be removed from the property. Once a pet has been removed from the property, the pet deposit shall not be returned until the termination of the tenancy

_____ (Resident Initial)     _____ (Resident Initial)     _____ (Resident Initial)     _____ (Resident Initial)     _____ (Resident Initial)

*Jennifer Schultz*    *Mickell Rigsby*

JS000190

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716



River House at the Trailhead



### <u>PET LEASE ADDENDUM</u>

**NOW COMES**    <u>River House at the Trailhead</u>    (hereinafter referred to as "Lessor") and

<u>Jennifer Schultz</u> (hereinafter

referred to as "Lessee") and for new and valuable consideration agree as follows:

**WHEREAS**, the Lessor and Lessee have entered into a Lease Agreement dated <u>01/04/2021</u> for the

rental of Apartment <u>R-302</u> (the "Unit") in the building located at <u>16801 E Mission Parkway, Spokane</u>

<u>Valley, WA 99216</u>    <u>River House at the Trailhead</u> ;

**WHEREAS**, the Lessee has made an application to the Lessor for a dog to reside with the Lessee in the

Unit;

**WHEREAS**, prior to the approval of a pet application, Lessee hereby agrees to the following:

1. Lessor shall provide to Lessee a DNA collection kit for each dog on the property.

2. Lessee shall use the kit to cheek swab its dog in the presence of the Lessor's agent and provide the collected material to the Lessor's agent.

3. Lessor's agent shall provide the materials to its dog registration company.

4. The Lessee shall affix the tag in the collection kit to the dog's collar to identify the dog as registered into the World Pet Registry and shall not allow the tag to be transferred to any other dog.

5. Lessee and Lessor shall be provided with the results of DNA testing in writing.

6. In the event fecal matter from Lessee's dog is found on the Property, Lessee agrees to be responsible for all testing and collection fees and costs incurred by the Lessor and shall pay a fine of $ <u>150.00</u> within fourteen (14) days of being notified in writing by the Lessor or its agent that Lessee's dog's feces has been located on the Property. If this occurs a second time with no specified time period in-between

1



EQUAL HOUSING OPPORTUNITY



*Jennifer Schultz*   *Mickell Rigsby*
Revised 2.17.16

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716



Lessee shall pay a fine of $ 200.00 within fourteen (14) days of being notified in writing by the Lessor or its

agent that Lessee's dog's feces has been located on the Property. If this occurs a third time Lessee shall be required to remove the animal in violation within fourteen (14) days of being notified in writing by the Lessor or its agent that Lessee's dog's feces has been located on the Property.

7. Lessee hereby agrees to indemnify, defend and hold Lessor harmless from any and all claims or causes of actions, including reasonable attorneys' fees, brought by any person or entity against the Lessor arising out of the registration, collection or testing of the Lessee's dog.

8. After the pet application is approved, the Lessee agrees to abide by the terms and conditions of the Pet Rules and Regulations attached hereto as Exhibit A.

All of the terms and conditions of the Pet Lease Addendum shall be incorporated by reference into the Lease Agreement and any breach of the terms and conditions of the Addendum shall be construed a breach of the Lease Agreement. Any amounts due and owing the Lessor as a result of a fee imposed for the collection, testing and resulting fine associated with the Pet Addendum shall be considered additional rent under the parties' Lease Agreement.

Lessor's Agent:_____    Date:_____

    I/We certify that I/we have read all the paragraphs contained in this Pet Addendum and voluntarily agree to each and every term.

Lessee_____    Date:_____

Lessee_____    Date:_____

2



EQUAL HOUSING
OPPORTUNITY


Revised 2.17.16

JS000192

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

**River House at the Trailhead**



<u>**River House at the Trailhead**</u>      **PET POLICY**

<u>**EXHIBIT A**</u>

Our pet policy has been established to ensure the safety of all our residents and to ensure the aesthetics of our community. Not all buildings in our community are allowed dogs, so these rules were set up in order to keep everyone happy.

Anyone found in violation of this policy will be warned in writing the first time. If these actions continue, we will terminate your leasing agreement and start eviction proceedings.

1. All dogs should be attended by an adult and leashed at all times while walking on the property.
2. Your pet is not allowed to be leashed to your back or front stairs.
3. Your pet must be current on all their vaccinations. A vaccination certificate must be supplied in order to move in or renew your leasing agreement with our community.
4. Dogs are not allowed in the clubhouse or pool area.
5. Preventative and/or general maintenance is required to maintain your home. In order to perform this work, your dog may need to be kenneled or kept in a room while this work is being conducted. This is required in order to protect the safety of our staff and your animal. In some cases, a scheduled appointment may be necessary to have an owner home to supervise the dog.
6. Any damage to your apartment or common areas caused by your pet will be your expense to repair or replace.
7. You are not allowed to transfer to another building unless it is a designated dog building, or your dog is no longer with you.
8. Your pet must be insured for damage and/or dog bite. The property owner of <u>**River House at the Trailhead**</u> will not be held responsible if your pet attacks and hurts another dog and/or person.
9. The weight limit set for the dogs in our community is _____ pounds.

Lessee:_____      Date:_____

Agent:_____      Date:_____

3


Revised 2.17.16


EQUAL HOUSING OPPORTUNITY

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

SUPPORT OR SERVICE ANIMAL AMENDMENT
TO ANIMAL ADDENDUM

NAA
NATIONAL APARTMENT ASSOCIATION

Date: _____ **January 4, 2021** _____
*(when this Addendum is filled out)*

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____ R-302 _____, 16801 E Mission
   Parkway _____
   _____ *(street address)* in
   _____ Spokane Valley _____
   *(city)*, Washington, _____ 99216 _____ *(zip code)*.

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: January 4, 2021
   Owner's name: River House at the Trail Head
   _____
   _____
   _____

   Residents *(list all residents)*:
   Jennifer Schultz
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   You acknowledge that the ownership of or need for the support or service animal does not entitle you to permit the animal to bother, threaten or harm other residents or persons without cause. While in common areas the animal must be supervised and the resident must retain control of the animal at all times. Resident is responsible for the proper disposal of animal waste. You acknowledge that if the animal violates the rules in the Animal Addendum or community rules, we have the right to evict both you and the support or service animal, as well as exercise other remedies under the lease.

The resident is responsible for the care of the support or service animal. In the event the support or service animal is sick or injured and you are unavailable to seek treatment for the animal, we will have the right (but not the duty) to contact a veterinarian and incur on your behalf any necessary veterinarian charges to render aid or treatment to the animal.

We will not charge a security deposit for your support or service animal. You will, however, be liable for any damages that this animal may cause.

3. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

**Date of Signing Addendum**

_____



JS000194
© 2018, National Apartment Association, Inc. - 9/2018, Washington 



## Service Animal Policy

**BACKGROUND**

The Federal Fair Housing Act requires that applicants and Residents with disabilities be provided with "reasonable accommodations" as needed, in order for them to have an opportunity for full use and enjoyment of their housing. Allowing Residents and their guests who have disabilities to be accompanied by their service animals is a reasonable accommodation to housing policy and practice.

**WHO NEEDS SERVICE ANIMALS?**

Some disabled people require the assistance of an animal because of their disabling conditions. Under most federal laws, a person is considered to be disabled if he/she has a sensory, mental or physical condition that substantially limits one or more major life activities (such as walking, seeing, working, etc.).

**WHAT IS A SERVICE ANIMAL?**

The most common service animals are dogs, but sometimes other species are used (for example, a cat or bird). Service animals may be any breed, size, weight. Some, but not all, service animals wear special collars and harnesses. Some, but not all, are licensed or "certified" and/or have identification papers. However, **there is no legal requirement for service animals to be visibly identified or to have documentation.**

In addition, there are many types of service animals with different names which are not certified and don't have special training. For example, companion animals, which don't perform specific tasks, are considered service animals. The next two sections explain in detail the different types of service animals.

**WHAT'S THE DIFFERENCE BETWEEN A SERVICE ANIMAL AND A PET?**

Service animals are not considered to be pets. A person with a disability uses a service animal as an auxiliary aid—similar to the use of a cane, crutches or wheelchair. Service animals are a medical device necessary for the full enjoyment of a home. For this reason, fair housing laws require that housing providers make modifications to "No Pet" policies to permit the use of a service animal by an individual with a disability. Service animals sometimes are called assistance animals or emotional support animals and, as stated previously, companion animals.

**WHAT DO SERVICE ANIMALS DO?**

- A guide animal serves as a travel tool by a person who is legally blind.
- A hearing animal alerts a person with a significant hearing loss or who is deaf when a sound occurs; such as a ringing alarm or knock on the door.
- A service animal helps a person who has a mobility or health disability. Duties may include carrying, fetching, opening doors, ringing doorbells, activating elevator buttons, steadying a person walking, helping a person up after a fall, etc.
- A seizure response animal assists a person with a seizure disorder. The animal's service depends on the person's needs. The animal may go for help, or may stand guard over the person during a seizure. Some animals have learned to predict a seizure and warn the person.
- A companion animal or emotional support animal assists people with psychological disabilities. Emotional support animals can help alleviate symptoms such as depression, anxiety, stress and difficulties regarding social interactions, allowing Residents to live independently and fully use and enjoy their living environment.



Service Animal Policy;



1

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716



**PRACTICAL GUIDELINES FOR RESIDENTS WHO WANT OR NEED SERVICE ANIMALS**

**REQUEST FOR A SERVICE ANIMAL ACCOMMODATION:**
The Resident who needs a service/companion animal can submit a request to the housing provider for an accommodation for the Resident's disability. The Resident will be provided with the Avenue5 Residential form "Request of Reasonable Accommodation". If the resident/applicant chooses another form, or verbally tells Avenue5 Residential, they may do so and it will be acceptable by Avenue5 Residential. If this option is chosen Avenue5 Residential will document the time and date that the request was made. Written requests should be dated, copied and copies retained by the Resident for proof that the request was made. NOTE: A Request for a Reasonable Accommodation is **NOT** required when the disability is visible.

**VERIFICATION OF DISABILITY AND NEED FOR A SERVICE ANIMAL**
The Resident must be prepared to provide written verification that he/she has a disability and that the accommodation is necessary to give the Resident equal opportunity to use and enjoy the housing and/or housing community. If the resident/applicant's situation requires that they get a third person to verify the disability or the need for the accommodation, (this happens when a person's disability is not obvious), the Resident/applicant should obtain verification on the Avenue5 Residential form "Reasonable Accommodation Verification Form". This verification form must be from his/her healthcare or mental health provider to the housing provider answering the following questions:

- Is the person disabled as defined by the fair housing laws?
- In the health care provider's professional opinion, does the person need the requested accommodation (use of a service animal) to have the same opportunity as a non-disabled person to use and enjoy the housing community?

While the property management may not require the requester of an accommodation to disclose the nature or severity of his/her disability, the requester might be required to show the relationship between the disability and the need for the requested accommodation.

For example, a Resident may need a seizure response animal. The seizures may come and go unexpectedly and due to genetics, an injury or some other situations. The only thing they need to disclose is that they have had seizures and many have seizures in the future and that the seizures come and go unexpectedly. Either the Resident can explain this or have it explained by a health care provider. The Resident does not have to say how often they have seizures, how severe the seizures are or what causes the seizures.

**ANIMAL CARE AND SUPERVISION:**
The Resident/handler is responsible for the care of his/her service animal. The animal must be supervised and the Resident/handler must retain full control of the animal at all times. This generally means that while the animal is in common areas, is it on a leash, in a carrier, or otherwise in the direct control of the animal owner/handler. When in the presence of others, the animal is expected to be well behaved. The Resident is responsible for the proper disposal of animal waste.

- Never allow the service animal to defecate on any property, public or private (except the Resident's own property), unless the Resident immediately removes the waste.


Service Animal Policy;

2



This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

- Always carry equipment sufficient to clean up the animal's feces whenever the service animal is in the common areas or off the Resident's property.
- Properly dispose of waste and/or litter.
- If you need assistance with cleanup, make arrangements for such help through family, friends or advocates.

---

**SERVICE ANIMAL POLICY**
**ACKNOWLEDGEMENT OF RECEIPT**

I hereby acknowledge the receipt of the Service Animal Policy implemented and enforced by Avenue5 Residential.


_____          _____
Resident Signature/Date                           Resident Signature/Date


_____          _____
Resident Signature/Date                           Resident Signature/Date


_____          _____
Property Manager Signature/Date



Service Animal Policy;

3



This document is digitally signed using RENTCafe eSignature services, Document ID: 1118716

# COMMUNITY POLICIES, RULES AND REGULATIONS ADDENDUM



*This Addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Addendum conflict with the Lease, the terms of this Addendum shall be controlling:*

Property Owner: <u>River House at the Trail Head</u>

Resident(s): <u>Jennifer Schultz</u>

Unit No./Address: <u>#R-302, 16801 E Mission Parkway, Spokane Valley, WA 99216</u>

Lease Date: <u>01/04/2021</u>

**I.    GENERAL CONDITIONS FOR USE OF DWELLING PROPERTY AND RECREATIONAL FACILITIES.**
Resident(s) permission for use of all common areas, Resident amenities, and recreational facilities (together, "Amenities") located at the Dwelling Community is a privilege and license granted by Owner, and not a contractual right except as otherwise provided for in the Lease. Such permission is expressly conditioned upon Resident's adherence to the terms of the Lease, this Addendum, and the Community rules and regulations ("Rules") in effect at any given time, and such permission may be revoked by Owner at any time for any lawful reason. In all cases, the most strict terms of either the Lease, this Addendum, or the Community Rules shall control. Owner reserves the right to set the days and hours of use for all Amenities and to change the character of or close any Amenity based upon the needs of Owner and in Owner's sole and absolute discretion, without notice, obligation or recompense of any nature to Resident. As allowed by law, Owner and management may make changes to the Rules for use of any Amenity at any time.

**Additionally, Resident(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's use of the amenities at the Community. Resident(s) agrees to hold Owner harmless and waive any and all claims, allegations, actions, damages, losses, or liabilities of every type, whether or not foreseeable, that Resident(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.**

**THE TERMS OF THIS ADDENDUM SHALL ALSO APPLY TO RESIDENT(S)' OCCUPANTS, AGENTS AND INVITEES, TOGETHER WITH THE HEIRS, ASSIGNS, ESTATES AND LEGAL REPRESENTATIVES OF THEM ALL, AND RESIDENT(S) SHALL BE SOLELY RESPONSIBLE FOR THE COMPLIANCE OF SUCH PERSONS WITH THE LEASE, THIS ADDENDUM, AND COMMUNITY RULES AND REGULATIONS, AND RESIDENT(S) INTEND TO AND SHALL INDEMNIFY AND HOLD OWNER HARMLESS FROM ALL CLAIMS OF SUCH PERSONS AS DESCRIBED IN THE PRECEDING PARAGRAPH. The term "Owner" shall include the Management, officers, partners, employees, agents, Owners, subsidiaries and affiliates of Owner.**

**II.    POOL.** This Community ☒ **DOES;** ☐ **DOES NOT** have a pool. When using the pool, Resident(s) agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the pool area and Management policies.
- All Swimmers swim at their own risk. Owner is not responsible for accidents or injuries. No lifeguard is provided by Owner.
- For their safety, Residents should not swim alone.
- Pool hours are posted at the pool.
- No glass, pets, or alcoholic beverages are permitted in the pool area. Use paper or plastic containers only.
- Proper swimming attire is required at all times and a swimsuit "cover up" should be worn to and from the pool.
- No running or rough activities are allowed in the pool area. Respect others by minimizing noise, covering pool furniture with a towel when using suntan oils, leaving pool furniture in pool areas, disposing of trash, and keeping pool gates closed.
- Resident(s) must accompany their guests at all times.
- Resident(s) must notify Owner any time there is a problem or safety hazard at the pool.

**IN CASE OF EMERGENCY DIAL 911**

**III.    FITNESS CENTER.** This Community ☒ **DOES;** ☐ **DOES NOT** have a fitness center. When using the fitness center, Resident agrees to the following:
- Residents and guests will adhere to the rules and regulations posted in the fitness center and Management policies.
- The Fitness Center is not supervised. Resident(s) are solely responsible for their own appropriate use of equipment.
- Resident(s) shall carefully inspect each piece of equipment prior to Resident's use and shall refrain from using any equipment that may be functioning improperly or that may be damaged or dangerous.
- Resident(s) shall immediately report to Management any equipment that is not functioning properly, is damaged or appears dangerous, as well any other person's use that appears to be dangerous or in violation of Management Rules and Policies.
- Resident(s) shall consult a physician before using any equipment in the Fitness Center and before participating in any aerobics or exercise class, and will refrain from such use or participation unless approved by Resident's physician.
- Resident(s) will keep Fitness Center locked at all times during Resident's visit to the Fitness Center.
- Resident(s) will not admit any person to the Fitness Center who has not registered with the Management Office.
- Resident(s) must accompany guests, and no glass, smoking, eating, alcoholic beverages, pets, or black sole shoes are permitted in the Fitness Center.

Card # issued:    (1) _____    (3) _____    (5) _____
                  (2) _____    (4) _____    (6) _____

*Jennifer Schultz*    *Mitchell Ragsby*

JS000198

**IV.    PACKAGE RELEASE.**  This Community ☒ DOES; ☐ DOES NOT accept packages on behalf of Residents.

*For communities that do accept packages on behalf of its Residents:*

Resident(s) gives Owner permission to sign and accept any parcels or letters sent to Resident(s) through UPS, Federal Express, Airborne, United States Postal Service or the like. Resident agrees that, to the fullest extent allowed by law, Owner does not accept responsibility or liability for any lost, damaged, or unordered deliveries, and agrees to hold Owner harmless for the same. Any packages not picked up after 30 days notice to Resident shall be returned to sender at Resident's expense. No packages addressed to persons not listed on the Lease will be accepted, and will be refused or returned immediately to sender. Packages accepted by Owner will not be delivered to Resident's unit.

**V.    BUSINESS CENTER.**  This Community ☐ DOES; ☒ DOES NOT have a business center.

Resident(s) agrees to use the business center at Resident(s) sole risk and according to the Rules and Regulations posted in the business center and Management policies. Owner is not responsible for data, files, programs or any other information lost or damaged on Business Center computers or in the Business Center for any reason. No software may be loaded on Business Center computers without the prior written approval of Community Management. For reasons of safety and protection of equipment, no inappropriate, offensive, or pornographic images or files (in the sole judgment of Owner) will be viewed or loaded onto the Business Center computers at any time. Residents will limit time on computers to _____ minutes if others are waiting to use them. Smoking, eating, alcoholic beverages, pets, and any disturbing behavior are prohibited in the business center.

**VI.    AUTOMOBILES/BOATS/RECREATIONAL VEHICLES.**  The following policies are in addition to those in the Lease, and may be modified by the additional rules in effect at the Community at any given time:

- Only _____2_____ vehicle(s) per unit is (are) allowed. Parking is not guaranteed.
- All vehicles must be registered at the Management office.
- Any vehicle(s) not registered, considered abandoned, or violating the Lease, this Addendum, or the Community Rules, in the sole judgment of Management, will be towed at the vehicle owner's expense after a _____1_____ hour notice is placed on the vehicle.
- Notwithstanding this, any vehicle illegally parked in a fire lane, designated no parking space or handicapped space, or blocking an entrance, exit, driveway, dumpster, or parked illegally in a designated parking space, will immediately be towed, without notice, at the vehicle owner's expense.
- The washing of vehicles is not permitted on the property unless specifically allowed in designated area.
- Any on property repairs and/or maintenance of any vehicle must be with the prior written permission of the Management.
- Recreational vehicles, boats or trailers may only be parked on the property with Management's permission (in Management's sole discretion), and must be registered with the Management Office and parked in the area(s) designated by Management.

**VII.    FIRE HAZARDS.**  In order to minimize fire hazards and comply with city ordinances, Resident shall comply with the following:

- Residents and guests will adhere to the Community rules and regulations other Management policies concerning fire hazards, which may be revised from time to time.
- No person shall knowingly maintain a fire hazard.
- **Grills, Barbeques, and any other outdoor cooking or open flame devices will be used only on the ground level and will be placed a minimum of** _____ **feet from any building including overhangs or ceilings.** Such devices will not be used close to combustible materials, tall grass or weeds, on exterior walls or on roofs, indoors, on balconies or patios, or in other locations which may cause fires.
- **Fireplaces:**  Only firewood is permitted in the fireplace. No artificial substances, such as Duraflame® logs are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold.
- Flammable or combustible liquids and fuels shall not be used or stored (including stock for sale) in dwellings, near exits, stairways breezeways, or areas normally used for the ingress and egress of people. This includes motorcycles and any
- apparatus or engine using flammable or combustible liquid as fuel.
- No person shall block or obstruct any exit, aisle, passageway, hallway or stairway leading to or from any structure.
- Resident(s) are solely responsible for fines or penalties caused by their actions in violation of local fire protection codes.

**VIII.    EXTERMINATING.**  Unless prohibited by statute or otherwise stated in the Lease, Owner may conduct extermination operations in Residents' dwelling several times a year and as needed to prevent insect infestation. Owner will notify Residents in advance of extermination in Residents' Dwelling, and give Resident instructions for the preparation of the Dwelling and safe contact with insecticides. Residents will be responsible to prepare the Dwelling for extermination in accordance with Owner's instructions. If Residents are unprepared for a scheduled treatment date Owner will prepare Residents' dwelling and charge Residents accordingly. Residents must request extermination treatments in addition to those regularly provided by Owner in writing and those treatments shall be at Resident's expense. **Residents agree to perform the tasks required by Owner on the day of interior extermination to ensure the safety and effectiveness of the extermination. These tasks will include, but are not limited to, the following:**

- Clean in all cabinets, drawers and closets in kitchen and pantry.
- If roaches have been seen in closets, remove contents from shelves and floor.
- Remove infants and young children from the dwelling.
- Remove pets or place them in bedrooms, and notify Owner of such placement.
- Remove chain locks or other types of obstruction on day of service.
- Cover fish tanks and turn off their air pumps.
- Do not wipe out cabinets after treatment.

In the case of suspected or confirmed bed bug infestation, resident will agree to the following:

- Resident will wash all clothing, bed sheets, draperies, towels, etc. in extremely hot water.
- Resident will thoroughly clean, off premises, all luggage, handbags, shoes and clothes hanging containers.]
- Resident will cooperate with Owner's cleaning efforts for all mattresses and seat cushions or other upholstered furniture, and will dispose of same if requested.

**RESIDENTS ARE SOLELY RESPONSIBLE TO NOTIFY OWNER IN WRITING PRIOR TO EXTERMINATION OF ANY ANTICIPATED HEALTH OR SAFETY CONCERNS RELATED TO EXTERMINATION AND THE USE OF INSECTICIDES**

*Jennifer Schultz*    *Mickell Rigsby*

IX.    **DRAPES AND SHADES.**    Drapes or shades installed by resident, when allowed, must be lined in white and present a uniform exterior appearance.

X.    **WATER BEDS.**    Resident shall not have water beds or other water furniture in the dwelling without prior written permission of Owner.

XI.    **BALCONY or PATIO.**    Balconies and patios shall be kept neat and clean at all times. No rugs, towels, laundry, clothing, appliances or other items shall be stored, hung or draped on railings or other portions of balconies or patios. No misuse of the space is permitted, including but not limited to, throwing, spilling or pouring liquids or other items, whether intentionally or negligently, over the balconies or patios.

XII.    **SIGNS.**    Resident shall not display any signs, exterior lights or markings on dwelling. No awnings or other projections shall be attached to the outside of the building of which dwelling is a part.

XIII.    **SATELLITE DISHES/ANTENNAS.**    You must complete a satellite addendum and abide by its terms prior to installation or use.

XIV.    **WAIVER/SEVERABILITY CLAUSE.**    No waiver of any provision herein, or in any Community rules and regulations, shall be effective unless granted by the Owner in a signed and dated writing. If any court of competent jurisdiction finds that any clause, phrase, or provision of this Part is invalid for any reason whatsoever, this finding shall not effect the validity of the remaining portions of this Addendum, the Lease Contract or any other addenda to the Lease Contract.

XV.    **SPECIAL PROVISIONS.**    The following special provisions control over conflicting provisions of this printed form:

Only Propane Grills Allowed.

I have read, understand and agree to comply with the preceding provisions.

_____    _____    _____    _____
Resident                          Date        Resident                          Date

_____    _____    _____    _____
Resident                          Date        Resident                          Date

_____    _____    _____    _____
Resident                          Date        Resident                          Date

_____    _____
Owner Representative              Date

*Jennifer Schultz*    *Mickell Ragsby*

Revised 9/2018, Washington



Amenities Lease Addendum

This Addendum is incorporated into the Lease Contract (the "Lease") identified below and is in addition to all the terms and conditions contained in the Lease. If any terms of this Lease Addendum conflict with the Lease, the terms of this Lease Addendum shall be controlling:

| | |
|---|---|
| *Property Owner:* | **River House at the Trail Head** |
| *Resident(s):* | **Jennifer Schultz** |
| *Unit No./Address:* | **16801 E Mission Parkway #R-302, Spokane Valley, WA 99216** |
| *Lease Date:* | **01/04/2021** |

1. The Community has made certain amenities and recreational facilities, including _____ , available for use by residents subject to the below acknowledgment and release.

2. Resident(s) acknowledge that the use of amenities and recreational facilities at the Community could expose Resident(s) to viruses or bacteria that could result in an infection or ailment. Resident(s) shall comply with the rules and regulations and owner policies relating to the mitigation or prevention of the spread of viruses and bacteria. Resident(s) shall comply with federal, state, county, and local laws, proclamations, orders, and guidelines regarding the use of face coverings while using amenity and recreational facilities. **Resident(s) assume the risks of personal injury, death and property damage relating to Resident(s)' use of the amenities at the apartment. Resident(s) hold harmless, indemnify, and release owner from any claims, allegations, actions, damages, losses, or liabilities, whether or not foreseeable, that Resident(s) may have against owner that is in any way related to such use. This release shall also apply to Resident(s)' occupants, invitees, guests, and their respective heirs, successors, assigns, estates, and legal representatives. The term "Owner" shall include the property owner, management, and each of their respective officers, employees, directors, managers, representatives, agents, and affiliates.**

I have read, understand and agree to comply with the preceding provisions.

| | |
|---|---|
| Residents | Date |
| Residents | Date |
| Residents | Date |
| Residents | Date |
| Residents | Date |
| Residents | Date |
| Owner Representative | Date |

*Revised 5/20/2020*
*Owner: Legal*

JS000201



This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

# PACKAGE ACCEPTANCE ADDENDUM

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____, 16801 E Mission
Parkway _____
_____ (street address) in
_____ Spokane Valley _____
(city), Washington, _____ 99216 _____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head
_____
_____
_____
_____
Residents (list all residents):
Jennifer Schultz _____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** By signing this Addendum, you wish for us to sign for, and to accept, U.S. mail and privately-delivered packages or other items on your behalf, subject to the terms and conditions set forth herein.

4. **PACKAGE ACCEPTANCE.**

A. **Generally.** You hereby authorize us and our agent to accept, on your behalf, any package or item delivered to our on-site management office during disclosed business hours, including but not limited to any package delivered by the U.S. Postal Service or by any private courier service or individual. You also specifically authorize us to sign on your behalf if the person or entity delivering said package or item requires an adult signature prior to delivery, including but not limited to the delivery of certified or registered mail. A photo I.D. is required before any packages will be released. Packages will only be released to verified Residents or approved representatives.

B. **Limitations.** You understand and agree that we may refuse to accept any package for any reason or no reason at all.

5. **TIME LIMITATION.** Due to limited storage space, we must ask that you pick up your package as soon as possible. You also agree that we shall have no duty whatsoever to hold or store any package for more than _____ days after receipt (if blank, the default period of time is 10 days after receipt of package). Accordingly, you should notify the management office if you are going to be away from the apartment home and expect to be receiving a package(s). After said time, you agree that any such package is deemed abandoned and you authorize us to return the package to its original sender.

6. **DUTY OF CARE, INDEMNIFICATION, ASSUMPTION OF RISKS AND WAIVER.** As to any package for which we sign and/or receive on your behalf, you understand and agree that we have no duty to notify you of our receipt of such package, nor do we have any duty to maintain, protect, or deliver said package to you, nor do we have any duty to make said package available to you outside disclosed business hours. Any packages or personal property delivered to us or stored by us shall be at your sole risk, and you assume all risks whatsoever associated with any loss or damage to your packages and personal property. To the greatest extent allowed by Washington law, you, your guests, family, invitees, and agents hereby waive any and all claims against us or our agents of any nature regarding or relating to any package or item received by us, including but not limited to, claims for theft, misplacing or damaging any such package, except in the event of our or our agent's gross negligence or willful misconduct. To the greatest extent allowed by Washington law, you also agree to defend and indemnify us and our agents and hold us both harmless from any and all claims that may be brought by any third party relating to any injury sustained relating to or arising from any package that we received on your behalf. To the greatest extent allowed by Washington law, you also agree to indemnify us and our agents and hold us harmless from any damage caused to us or our agents by any package received by us for you. You also authorize us to throw away or otherwise dispose of any package that we, in our sole discretion, deem to be dangerous, noxious, or in the case of packaged food, spoiled, and waive any claim whatsoever resulting from such disposal.

7. **SEVERABILITY.** If any provision of this Addendum or the Lease Contract is illegal, invalid or unenforceable under any applicable law, then it is the intention of the parties that (a) such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease, (b) the remainder of this Addendum shall not be affected thereby, and (c) it is also the intention of the parties to this Addendum that in lieu of each clause or provision that is illegal, invalid or unenforceable, there be added as a part of this Addendum a clause or provision similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

8. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
(Signs below)

_____

**Date of Signing Addendum**

_____

**Resident or Residents**
(All residents must sign)

_____
_____
_____

*Jennifer Schultz   Mikell Rigsby*

JS000202

©2018, National Apartment Association, Inc. – 9/2018, Washington

# LEASE CONTRACT ADDENDUM
# FOR SATELLITE DISH OR ANTENNA



Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased dwelling, subject to FCC limitations. We as a rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____R-302_____, 16801 E Mission Parkway _____
   _____ (street address) in
   _____Spokane Valley_____
   (city), Washington, ___99216___ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract date: **January 4, 2021**
   Owner's name: **River House at the Trail Head**
   _____
   _____
   _____

   Residents (list all residents):
   **Jennifer Schultz**
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **NUMBER AND SIZE.** You may install ____1____ satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

4. **LOCATION.** Your satellite dish or antenna must be located: (1) inside your dwelling; or (2) in an area outside your dwelling such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use. You understand that not all dwellings shall be capable of receiving satellite signals, depending on the location of the dwelling, and that inability to receive signals shall not be construed in any way as a breach of the agreement by Landlord nor for a reduction in the rent.

5. **SAFETY AND NON-INTERFERENCE.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

6. **SIGNAL TRANSMISSION FROM EXTERIOR DISH OR ANTENNA TO INTERIOR OF DWELLING.** You may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window—without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us in writing. Running the cable along any portion of the common areas is strictly prohibited.

7. **SAFETY IN INSTALLATION.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be <u>qualified</u>.

8. **MAINTENANCE.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

9. **REMOVAL AND DAMAGES.** You must remove the satellite dish or antenna and all related equipment when you move out of the dwelling. In accordance with the Lease Contract, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

10. **LIABILITY INSURANCE. You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance (if available) to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment.** The insurance coverage must be $ _____, which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc.

11. **SECURITY DEPOSIT.** An additional security deposit of $ _____ will be charged. We (check one) ☐ will consider or ☐ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in the Security Deposit paragraph of the Lease Contract (check one) ☐ does or ☐ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

*Jennifer Schultz* (signature)

JS000203

©2018, National Apartment Association, Inc. - 9/2018, Washington

This additional security deposit is required to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary, depending on: (1) how the dish or antenna is attached (nails, screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost repair or restoration after removal, etc.

**12. WHEN YOU MAY BEGIN INSTALLATION.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 10 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 11; and (4) received our written approval of the installation materials and the person or company that will do the installation, which approval may not be unreasonably withheld.

**13. MISCELLANEOUS.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

**14. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

Satellite dish may NOT be permanently
attached to the building or cause
permanent damage. Please contact office to
discuss further options. Satellite dish
must be removed by resident prior to move
out. If dish is left after move out $50.00
will be charged to account for disposal.

---
---
---
---
---
---
---
---
---
---
---
---

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

**Date of Lease Contract**

January 4, 2021

Jennifer Schultz    Mickell Rigsby

Page 2 of 2

JS000204
© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018,

## PHOTO, VIDEO, AND STATEMENT RELEASE ADDENDUM

**NAA**
NATIONAL APARTMENT ASSOCIATION
We Lead the Way Home

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____R-302_____, 16801 E Mission Parkway _____ (street address) in
_____ Spokane Valley _____
(city), Washington, ____99216____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: _January 4, 2021_____
Owner's name: _River House at the Trail Head_
_____
_____
_____

Residents (list all residents):
_Jennifer Schultz_____
_____
_____
_____
_____
_____
_____
_____
_____

Occupants (list all occupants):
_Kerry Schultz_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE OF ADDENDUM.** By signing this Addendum, you, without payment or other consideration, agree to grant us permission to use your likeness in photographs, videos and/or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will be collectively referred to as "media."

A. CONSENT FOR MINOR OCCUPANTS. By signing this Addendum, if any minor occupants are named above, you further certify that you are the parent, or legal guardian of the minor occupant(s) named above, and you, without payment or other consideration, agree to grant us permission to use their likeness in photographs, videos and/or other electronic and/or digital reproductions, including voice, in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. For purposes of this addendum, photographs, videos, written comments, statements, and other digital reproductions will hereinafter be collectively referred to

4. **PHOTO AND VIDEO RELEASE.** You hereby grant us and our agents and affiliates (collectively, the "Released Parties") permission and a license to take, use, reuse, and publish the likeness of you and any minor occupants in all photographs or other electronic and/or digital media in any and all of our publications, including, without limitation, any website entries, advertising websites, and any other marketing materials. You understand and agree that these materials will become the property of the Released Parties and will not be returned. You agree to irrevocably authorize the Released Parties to edit, alter, copy, exhibit, publish, or distribute this media for any lawful purpose whatsoever including, without limitation, promotional and advertising uses. You waive the right to inspect or approve the finished product, including any written or electronic copy, wherein your likeness appears now or in the future. In addition, you waive any right to payment, royalties, or any other compensation arising or related to the use of the media.

5. **CONSENT TO USE YOUR NAME, LIKENESS, WRITTEN COMMENTS, AND STATEMENTS.** You are expressly agreeing to allow us to post your name, picture, written comments, and statements, and/or the names, pictures, written comments, and statements of any minor occupants in any and all of our publications, including, without limitation, any website entries, advertising websites, social media websites, and any other marketing materials. You hereby grant the Released Parties permission and a license to use, reproduce, and publish any media on its website, social media platforms, or in other marketing-related materials, whether in electronic or print form.

6. **RELEASE OF LIABILITY.** You hereby release, hold harmless, and forever discharge us from any claims or causes of actions including, without limitation, any and all claims for libel or violation of any right of privacy, related to our use of the media in any and all of our publications, including any website entries, advertising websites, social media websites, and any other marketing material so long as the claim or cause of action does not result from our intentional misconduct or gross negligence. This consent and release shall be binding upon you and your heirs, legal representatives and assigns.

7. **REVOCATION.** You have the right to revoke your consent to our use of your name, picture, video, voice, written comments, or statement, and/or the name, picture, video, voice, written comments, or statement of any minor occupants, by written notice to us.

8. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Jennifer Schultz* media Rigley

©2018, National Apartment Association, Inc. - 9/2018, Washington

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

**Date of Signing Addendum**

JS000206

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018.



## Addendum to Rental Agreement
## Surveillance Cameras

Cameras may be installed at all gates and various common areas throughout the community. These areas are continually video-taped; and if they are it is for the sole purpose of protecting the real and personal property of the owner the apartment community.

Video cameras are not intended to protect, monitor or give a sense of security to any resident(s) or guest(s) visiting  __River House at the Trailhead__ .

Security or apartment personnel DO NOT monitor cameras.

_____        _____
Resident Signature/Date                        Resident Signature/Date

_____        _____
Resident Signature/Date                        Resident Signature/Date



Surveillance Camera Addendum



This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

# BED BUG ADDENDUM



Date: _____January 4, 2021_____
(when this Addendum is filled out)

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This Addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____R-302_____, 16801 E
Mission Parkway
_____ *(street address)* in
Spokane Valley
*(city)*, Washington, ____99216____ *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head
_____
_____
_____

Residents *(list all residents):*
Jennifer Schultz
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs *(cimex lectularius)* which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

4. **INSPECTION AND INFESTATIONS.** BY SIGNING THIS ADDENDUM, YOU REPRESENT THAT:

   - YOU HAVE INSPECTED THE DWELLING PRIOR TO MOVING IN, OR PRIOR TO SIGNING THIS ADDENDUM, AND YOU DID NOT FIND ANY EVIDENCE OF BED BUGS OR A BED BUG INFESTATION;

   OR

   - YOU WILL INSPECT THE DWELLING WITHIN 48 HOURS AFTER MOVING IN, OR WITHIN 48 HOURS AFTER SIGNING THIS ADDENDUM AND WILL NOTIFY US OF ANY BED BUGS OR BED BUG INFESTATIONS.

   You agree that you have read the information provided in this Addendum and that you are not aware of any infestation or presence of bed bugs in your current or previous dwellings, furniture, clothing, personal property, or possessions. You also acknowledge that you have fully disclosed to us any previous bed bug infestations or bed bug issues that you have experienced.

   If you disclose to us a previous experience with bed bug infestations or other bed bug related issues, we can review documentation of the previous treatment(s) and inspect your personal property and possession to confirm the absence of bed bugs.

5. **ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. Unless otherwise prohibited by law, you are responsible for and must, at your own expense, have your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

6. **NOTIFICATION.** You must promptly notify us in writing:
   - of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
   - of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
   - if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

7. **COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

8. **RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit, other dwelling units, or common areas for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other residents in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other dwellings. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract, and obtain immediate possession of the dwelling. If you fail to move out after your right of occupancy has been terminated, you will be liable for holdover rent under the Lease Contract.

*Jennifer Schultz*   *Mitchell Rigsby*

JS000208

© 2020, National Apartment Association, Inc. - 2/2020, Washington

9. **TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

**SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**You are legally bound by this document. Please read it carefully.**

**Resident or Residents**
*(All residents must sign)*

**Owner or Owner's Representative**
*(Signs below)*

_____

_____

_____    **Date of Signing Addendum**

_____

_____    _____

*You are entitled to receive an original of this Addendum after it is fully signed. Keep it in a safe place.*

© 2020, National Apartment Association, Inc. · 2/2020, Washington

# BED BUGS — A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months, are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals—their sole food source— the bugs assume a distinctly blood-red hue until digestion is complete.

## Bed bugs don't discriminate

Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

## Bed bugs don't transmit disease

There exists no scientific evidence that bed bugs transmit disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease transmitting pests. Again, claims associating bed bugs with disease are false.

## Identifying bed bugs

*Bed bugs can often be found in, around and between:*

- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors

- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

## Preventing bed bug encounters when traveling

Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

## Bed bug do's and don'ts

- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.



© 2020, National Apartment Association, Inc. · 2/2020, Washington

Page 3 of 3

## MOLD INFORMATION AND PREVENTION ADDENDUM

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.*

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____ 16801 E Mission Parkway _____
_____ *(street address)* in
_____ Spokane Valley _____
*(city)*, Washington, ____ 99216 ____ *(zip code).*

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **January 4, 2021** _____
Owner's name: **River House at the Trail Head** ___
_____
_____
_____
_____

Residents *(list all residents)*:
**Jennifer Schultz** _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **ABOUT MOLD.** Mold is found virtually everywhere in our environment—both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for person with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken.

4. **PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:

- Keep your dwelling clean—particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines—especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering

or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

- Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.

- Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

- Keep the thermostat set to automatically circulate air in the event temperatures rise to or above 80 degrees Fahrenheit.

5. **IN ORDER TO AVOID MOLD GROWTH**, it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

- rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

- overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

- leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

- washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

- leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

- insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

6. **IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON** *NON-POROUS* **SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold). Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be

*Jennifer Schultz*

©2018, National Apartment Association, Inc.- 9/2018, Washington

used to help remove non-visible mold products from porous items, such as fibers in sofas, chairs, drapes and carpets—provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

7. **DO NOT CLEAN OR APPLY BIOCIDES TO:**  (1) visible mold on *porous surfaces*, such as sheetrock walls or ceilings, or (2) *large areas* of visible mold on *non-porous* surfaces. Instead, notify us in writing, and we will take appropriate action.

8. **COMPLIANCE.**  Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.**

**SPECIAL PROVISIONS.**  The following special provisions control over conflicting provisions of this printed form:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
*(All residents must sign here)*

_____
_____
_____
_____
_____
_____

**Owner or Owner's Representative**
*(Signs here)*

_____

**Date of Lease Contract**

January 4, 2021
_____

*Jennifer Schultz    Mickell Ragsberg*

JS000212                © 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, September 2018.

## SMOKE/CARBON MONOXIDE ALARM ADDENDUM

Date: _____January 4, 2021_____

(when this Addendum is filled out)



This SMOKE/CARBON MONOXIDE ALARM ADDENDUM is incorporated into the Apartment Lease Contract dated _____January 4, 2021_____, by and between Jennifer Schultz

_____

_____

_____

_____

_____

_____

_____

_____

Resident(s) (list all residents) and River House at the Trail Head

_____

_____

the Landlord located at _____R-302_____ (Apt. No.), 16801 E Mission Parkway

(street address), in _____Spokane Valley_____ (city), Washington, _____99216_____ (zip code).

**SMOKE ALARM:** Your Premises are equipped with _____ (number) smoke alarms. Each smoke alarm is powered by ☐ a battery ☐ electricity ☐ electricity with battery backup. The smoke alarms were tested by the Landlord at the commencement of your tenancy and found to be in good working condition.

**CARBON MONOXIDE ALARM:** As required by law, your Premises are outfitted with a carbon monoxide alarm. The carbon monoxide alarm is a ☐ **battery** ☐ **electric** ☐ **electric with battery backup** powered device. The carbon monoxide alarm was tested by the Landlord at the commencement of your tenancy and found to be in good working condition.

**RESIDENT'S DUTIES:** Resident shall (a) test any alarm so provided at least once every six months (but preferably once per month); (b) keep the alarm's case clean and free from dirt, debris, and infestation; (c) replace batteries as needed; (d) immediately notify Landlord of any operating deficiencies; and (e) not remove, damage, alter, modify, obstruct, or tamper with any properly functioning alarm or remove working batteries from the same. If the Premises are so equipped, Resident shall not tamper with, obstruct, damage or otherwise alter or modify the indoor sprinkler system.

☐ If the foregoing box is checked, then (a) do not replace batteries, (b) immediately notify the Landlord if you think that any batteries should be replaced, and (c) initial here: _____

**TESTING YOUR ALARM:** You must test the alarm by using the test button. (When pressed, this button affects the smoke alarm like real smoke would during a fire, and the carbon monoxide alarm if carbon monoxide exceeds the alarm's acceptable levels.) To use the test button, firmly press the test button until the alarm sounds (normally 2-10 seconds later). Shortly after the button is released, the alarm will stop sounding. Do not test any alarm with a flame. When battery power is low, the alarm will beep about once a minute for at least 30 days. When the battery is dead, the alarm will not sound.

**HUSH FEATURE:** You can silence an alarm equipped with a hush feature by holding the hush button until the alarm stops sounding. Do not disconnect battery to stop alarm sounding.

**BATTERY:** Use only with the following batteries: Mallory or Duracell Alkaline No. MN 1604, Eveready 552 9-volt, or an equivalent of these batteries. Do not use ordinary or heavy-duty carbon-zinc batteries. Use of any other battery may be detrimental to the operation of the alarm.

**WHEN TO REPLACE:** A defective, low power, or dying battery must be replaced immediately so as to ensure proper operation and safety.

**TAMPERING FEE:** Removal of or tampering with a smoke alarm and/or carbon monoxide alarm will result, without limitation, in a $250.00 fee and/or a termination notice.

## SMOKE AND CARBON MONOXIDE ALARMS:
### RESIDENT RESPONSIBILITIES

I have received the smoke alarm, carbon monoxide alarm, in Apartment # _____R-302_____ in good working order. I understand it is MY responsibility to test and maintain the alarm(s) within said unit and to immediately notify the Landlord or authorized agent of any deficiencies.

**Resident or Residents** (sign here)          **Date of Signing Addendum**

_____

_____

_____

_____

**Landlord or Landlord's Representative** (sign here)          **Date of Signing Addendum**

_____



© 2019, National Apartment Association, Inc. - 4/2019, Washington





## Carbon Monoxide Detector Agreement

**THIS AGREEMENT** is made and entered into between <u>River House at the Trail Head</u>
_____"Owner/Agent" and <u>Jennifer Schultz</u>
_____"Resident".

### OWNER/AGENT AND RESIDENT MUTUALLY AGREE AS FOLLOWS:

1. Resident is renting from Owner/Agent the premises located at: <u>16801 E Mission Parkway #R-302, Spokane Valley, WA 99216</u> .
2. This Agreement is an Addendum and part of the Rental/Lease Agreement between Owner/Agent and Resident.
3. This premise(s) is/are equipped with a carbon monoxide detector device.
4. Resident acknowledges the carbon monoxide device(s) was/were tested and its operation explained by Owner/Agent in the presence of Resident at time of initial occupancy and the detector(s) was/were operating properly at that time.
5. Resident shall perform the manufacturer's recommended test at least once a week to determine if the carbon monoxide detector(s) is/are operating properly.
6. Initial ONLY IF BATTERY OPERATED _____   _____   _____   _____   _____

   By initialing as provided, each resident understands that said carbon monoxide detector(s), and alarm is a battery operated unit and it shall be each Resident(s) responsibility to:

   a. Ensure that battery is in operating condition at all times;
   b. Replace the battery as needed (unless otherwise provided by law); and
   c. If, after replacing the carbon monoxide(s) do not work, inform the Owner/Agent immediately.

7. Resident(s) must inform the Owner/Agent immediately in writing of any defect, malfunction or failure of any device(s).
8. In accordance with state law, Resident shall allow Owner/Agent access to the premises for that purpose.
9. Date:_____ Resident: _____ Date:_____ Resident: _____

   Date:_____ Resident: _____ Date:_____ Resident: _____

   Date:_____ Resident: _____ Owner/Agent: _____

_Jennifer Schultz_    _Mickell Rigsby_

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

## FIRE SAFETY AND PROTECTION INFORMATION

This Fire Safety and Protection Information form is incorporated into the Lease Contract executed on _____January 4, 2021_____ between _River House at the Trail Head_ _____ ( "We" ) and _Jennifer Schultz_ _____

("You") of Unit No. _____R-302_____ located at _16801 E Mission Parkway_ (street address) in _Spokane Valley, WA 99216_ _____ and is in addition to all terms and conditions in the Lease Contract.

1. The dwelling is equipped with smoke detection devices as required by RCW 43.44.110. These smoke detection devices are ☒ hard wired ☒ battery operated. The devices have been inspected and are properly operating at the commencement of the tenancy. It is the resident's responsibility to maintain the devices in proper operating condition including replacement of batteries, if necessary. A fine can be imposed for failure to comply with the provisions of RCW 43.44.110.

2. A diagram showing the emergency evacuation routes for residents is attached as Exhibit A.

3. The dwelling complex ☐ does ☐ does not have a fire sprinkler system.

4. The dwelling complex ☐ does ☐ does not have a fire alarm system.

5. The dwelling complex ☒ does ☐ does not have a smoking policy. A copy of any smoking policy is attached as Exhibit B.

6. The dwelling complex ☐ does ☒ does not have an emergency notification plan for residents. A copy of any such plan is attached as Exhibit C.

7. The dwelling complex ☐ does ☒ does not have an emergency relocation plan for residents. A copy of any such plan is attached as Exhibit D.

8. The dwelling complex ☐ does ☒ does not have an emergency evacuation plan for residents. A copy of any such plan is attached as Exhibit E.

**Resident or Residents**
*(All residents must sign here)*

_____

_____

_____

_____

_____

_____

**Owner or Owner's Representative**
*(signs here)*

_____

**Date of Lease Contract**

_January 4, 2021_

*Jennifer Schultz*   *Mickell Ragsley*

©2018, National Apartment Association, Inc. • 9/2018, Washington



# EXHIBIT B TO FIRE SAFETY AND PROTECTION INFORMATION

| Resident(s):<br><br>Jennifer Schultz | Date:<br><br>01/04/2021 |
|---|---|
| Apartment Address:<br>16801 E Mission Parkway #R-302, Spokane Valley, WA | |

**Smoking Policy**
Smoking is not permitted in or adjacent to the building. This prohibition applies to **all elevators, hallways, stairwells, garages, parking lots, Club House, and pool/spa area**. In addition, all indoor common areas are non-smoking. Please completely extinguish and place all smoking materials in a proper waste receptacle before entering 'Common Areas'.

'Common Areas' include **all elevators, hallways, stairwells, garages, parking lots, Club House, and pool/spa area**.

Failure to comply with this notice will be a breach of your rental agreement.

Dated January 17, 2014

_____     _____     _____     _____
Resident                            Date               Owner/Agent                          Date

*Jennifer Schultz*     *Mickell Rigsby*

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

**NO-SMOKING ADDENDUM**

Date: _____ **January 4, 2021** _____
(when this Addendum is filled out)

**NAA**
NATIONAL APARTMENT ASSOCIATION

*All use of any tobacco product involving smoking, burning, or combustion of tobacco is prohibited in any portion of the apartment community. You are entitled to receive an original of this No-Smoking Addendum after it is fully signed. Keep it in a safe place.*

1. **DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____ 16801 E Mission Parkway _____
_____ (street address) in
_____ Spokane Valley _____
(city), Washington, _____ 99216 _____ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: **January 4, 2021**
Owner's name: **River House at the Trail Head** _____
_____
_____
_____
_____

Residents *(list all residents):*

Jennifer Schultz _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **DEFINITION OF SMOKING.** Smoking refers to any use or possession of a cigar, cigarette, e-cigarette, hookah, vaporizer, or pipe containing tobacco or a tobacco product while that tobacco or tobacco product is burning, lighted, vaporized, or ignited, regardless of whether the person using or possessing the product is inhaling or exhaling the smoke from such product. The term tobacco includes, but is not limited to any form, compound, or synthesis of the plant of the genus Nicotiana or the species N. tabacum which is cultivated for its leaves to be used in cigarettes, cigars, e-cigarettes, hookahs, vaporizers, or pipes. Smoking also refers to use or possession of burning, lighted, vaporized, or ignited non-tobacco products if they are noxious, offensive, unsafe, unhealthy, or irritating to other persons.

4. **SMOKING ANYWHERE INSIDE BUILDINGS OF THE APARTMENT COMMUNITY IS STRICTLY PROHIBITED.** All forms and use of burning, lighted, vaporized, or ignited tobacco products and smoking of tobacco products inside any dwelling, building, or interior of any portion of the apartment community is strictly prohibited. Any violation of the no-smoking policy is a material and substantial violation of this Addendum and the Lease Contract.

The prohibition on use of any burning, lighted, vaporized, or ignited tobacco products or smoking of any tobacco products extends to all residents, their occupants, guests, invitees and all others who are present on or in any portion of the apartment community. The no-smoking policy and rules extend to, but are not limited to, the management and leasing offices, building interiors and hallways, building common areas, dwellings, club house, exercise or spa facility, tennis courts, all interior areas of the apartment community, commercial shops, businesses, and spaces, work areas, and all other spaces whether in the interior of the apartment community or in the enclosed spaces on the surrounding community grounds.

Smoking of non-tobacco products which are harmful to the health, safety, and welfare of other residents inside any dwelling or building is also prohibited by this Addendum and other provisions of the Lease Contract.

5. **SMOKING OUTSIDE BUILDINGS OF THE APARTMENT COMMUNITY.** Smoking is permitted only in specially designated areas outside the buildings of the apartment community. Smoking must be at least _____ 25 _____ feet from the buildings in the apartment community, including administrative office buildings. If the previous field is not completed, smoking is only permitted at least 25 feet from the buildings in the apartment community, including administrative office buildings. The smoking-permissible areas are marked by signage.

Smoking on balconies, patios, and limited common areas attached to or outside of your dwelling ☐ is ☒ is not permitted.

The following outside areas of the community may be used for smoking: **Designated smoking areas and must be 25 feet away from any building.** _____
_____
_____

Even though smoking may be permitted in certain limited outside areas, we reserve the right to direct that you and your occupants, family, guests, and invitees cease and desist from smoking in those areas if smoke is entering the dwellings or buildings or if it is interfering with the health, safety, or welfare or disturbing the quiet enjoyment, or business operations of us, other residents, or guests.

6. **YOUR RESPONSIBILITY FOR DAMAGES AND CLEANING.** You are responsible for payment of all costs and damages to your dwelling, other residents' dwellings, or any other portion of the apartment community for repair, replacement, or cleaning due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees, regardless of whether such use was a violation of this Addendum. Any costs or damages we incur related to repairs, replacement, and cleaning due to your smoking or due to your violation of the no-smoking provisions of the Lease Contract are in excess of normal wear and tear. Smoke related damage, including but not limited to, the smell of tobacco smoke which permeates sheetrock, carpeting, wood, insulation, or other components of the dwelling or building is in excess of normal wear and tear in our smoke free apartment community.

7. **YOUR RESPONSIBILITY FOR LOSS OF RENTAL INCOME AND ECONOMIC DAMAGES REGARDING OTHER RESIDENTS.** You are responsible for payment of all lost rental income or other economic and financial damages or loss to us due to smoking or smoke related damage caused by you or your occupants, family, guests, or invitees which results in or causes other residents to vacate their dwellings, results in disruption of other residents' quiet enjoyment, or adversely affects other residents' or occupants' health, safety, or welfare.

8. **LEASE CONTRACT TERMINATION FOR VIOLATION OF THIS ADDENDUM.** We have the right to terminate your Lease Contract or right of occupancy of the dwelling for any violation of this No-Smoking Addendum. Violation of the no-smoking provisions is a material and substantial default or violation of the Lease Contract. Despite the termination of the Lease Contract or your occupancy, you will remain liable for rent through the end of the Lease Contract term or the date on which the dwelling is re-rented to a new occupant, whichever comes first. Therefore, you may be responsible for payment of rent after you vacate the leased premises even though you are no longer living in the dwelling.

*Jennifer Schultz   Michele Clayson*

JS000217

©2018, National Apartment Association, Inc. - 10/2018, Washington

Page 1 of 2

9. **EXTENT OF YOUR LIABILITY FOR LOSSES DUE TO SMOKING.** Your responsibility for damages, cleaning, loss of rental income, and loss of other economic damages under this No-Smoking Addendum are in addition to, and not in lieu of, your responsibility for any other damages or loss under the Lease Contract or any other addendum.

10. **YOUR RESPONSIBILITY FOR CONDUCT OF OCCUPANTS, FAMILY MEMBERS, AND GUESTS.** You are responsible for communicating this community's no-smoking policy and for ensuring compliance with this Addendum by your occupants, family, guests, and invitees.

11. **THERE IS NO WARRANTY OF A SMOKE FREE ENVIRONMENT.** Although we prohibit smoking in all interior parts of the apartment community, there is no warranty or guaranty of any kind that your dwelling or the apartment community is smoke free. Smoking in certain limited outside areas is allowed as provided above. Enforcement of our no-smoking policy is a joint responsibility which requires your cooperation in reporting incidents or suspected violations of smoking. You must report violations of our no-smoking policy before we are obligated to investigate and act, and you must thereafter cooperate with us in prosecution of such violations.

This is an important and binding legal document. By signing this Addendum you are agreeing to follow our no-smoking policy and you are acknowledging that a violation could lead to termination of your Lease Contract or right to continue living in the dwelling. If you or someone in your household is a smoker, you should carefully consider whether you will be able to abide by the terms of this Addendum.

**SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:

_____

### Resident or Residents
*(All residents must sign here)*

_____

### Owner or Owner's Representative
*(Signs here)*

_____

*Jennifer Schultz   Mickell Rigsby*

JS000218

© 2018, National Apartment Association, Inc.
Washington/National Apartment Association Official Form, October 2018.

CRIME/DRUG FREE HOUSING ADDENDUM

NAA
NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____ R-302 _____ 16801 E Mission Parkway _____
   _____ (street address) in
   Spokane Valley
   (city), Washington, __ 99216 __ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: January 4, 2021
   Owner's name: River House at the Trail Head
   _____
   _____
   _____

   Residents (list all residents):
   Jennifer Schultz
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

3. **ADDENDUM APPLICABILITY.** In the event any provision in this Addendum is inconsistent with any provision(s) contained in other portions of, or attachments to, the above-mentioned Lease Contract, then the provisions of this Addendum shall control. For purposes of this Addendum, the term "Premises" shall include the dwelling unit, all common areas, all other dwelling units on the property or any common areas or other dwelling units on or about other property owned or managed by the Owner. The parties hereby amend and supplement the Lease Contract as follows:

4. **CRIME/DRUG FREE HOUSING.** Resident, members of the Resident's household, Resident's guests, and all other persons affiliated with the Resident:

   A. Shall not engage in any illegal or criminal activity on or about the premises. The phrase, "illegal or criminal activity" shall include, but is not limited to, the following:

      1. Engaging in any act intended to facilitate any type of criminal activity.

      2. Permitting the Premises to be used for, or facilitating any type of criminal activity or drug related activity, regardless of whether the individual engaging in such activity is a member of the household, or a guest.

      3. The unlawful manufacturing, selling, using, storing, keeping, purchasing or giving of an illegal or controlled substance or paraphernalia as defined in city, county, state or federal laws, including but not limited to the State of Washington and/or the Federal Controlled Substances Act.

      4. Violation of any federal drug laws governing the use, possession, sale, manufacturing and distribution of marijuana, regardless of state or local laws. (So long as the use, possession, sale, manufacturing and distribution of marijuana remains a violation of federal law, violation of any such federal law shall constitute a material violation of this rental agreement.)

      5. Engaging in, or allowing, any behavior that is associated with drug activity, including but not limited to having excessive vehicle or foot traffic associated with his or her unit.

      6. Any breach of the Lease Contract that otherwise jeopardizes the health, safety, and welfare of the Owner, Owner's agents, or other Residents, or involving imminent, actual or substantial property damage.

      7. Engaging in or committing any act that would be a violation of the Owner's screening criteria for criminal conduct or which would have provided Owner with a basis for denying Resident's application due to criminal conduct.

      8. Engaging in any activity that constitutes waste, nuisance, or unlawful use.

   B. AGREE THAT ANY VIOLATION OF THE ABOVE PROVISIONS CONSTITUTES A MATERIAL VIOLATION OF THE PARTIES' LEASE CONTRACT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this Addendum shall be deemed a serious violation, and a material default, of the parties' Lease Contract. It is understood that a single violation shall be good cause for termination of the Lease Contract. Notwithstanding the foregoing comments, Owner may terminate Resident's tenancy for any lawful reason, and by any lawful method, with or without good cause.

5. **CRIMINAL CONVICTION NOT REQUIRED.** Unless otherwise provided by law, proof of violation of any criminal law shall not require a criminal conviction.

6. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

Resident or Residents (sign here)

Date of Signing Addendum

_____         _____
_____         _____
_____         _____
_____         _____

Jennifer Schultz  Owner or Owner's Representative (signs here)

Date of Signing Addendum

© 2018, National Apartment Association, Inc. - 9/2018, Washington

# CRIME FREE LEASE ADDENDUM

As further consideration of and for the foregoing Lease Agreement and any renewal thereof, Resident(s) and Owner/Agent further agree as follows:

1.  Resident(s), any members of Resident(s)' household, or a guest, invitee, or other person under the control of Resident(s) shall not engage in criminal activity, including drug-related criminal activity, at _____**River House at the**_____ or on or near the premises. "Drug-related criminal activity" means the intentional illegal manufacture, sale, distribution, use or possession of a controlled substance. (As defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802)).

2.  Resident(s), any members of Resident(s)' household, or a guest, invitee, or other person under the control of Resident(s) shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, gang activity, or illegal defacement of property with graffiti or otherwise, on or near public or private property and the premises.

3.  Resident(s), any members of Resident(s)' household, or a guest, invitee, or other person under the control of Resident(s) shall not permit _____**River House at the**_____ or the premises to be used for, or to facilitate criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a Resident, a member of Resident(s)' household, guest, invitee, or other person under the control of Resident(s).

4.  Resident(s), any members of Resident(s)' household, or a guest, invitee, or other person under the control of Resident(s) shall not engage in the unlawful manufacturing, selling, using, storing, keeping, possessing, or giving of a controlled substance at any location within, on or near _____**River House at the**_____ or the premises.

5.  Resident(s), any members of Resident(s)' household, or a guest, invitee, or other person under the control of Resident(s) shall not engage in any illegal activity, including, but not limited to, prostitution, criminal street gang activity, threatening or intimidating any person whomsoever, assault, the unlawful discharge of fire arms, or unlawfully brandishing any weapon whatsoever, or any breach of the Lease Agreement which jeopardizes the health, safety and welfare of the Owner/Agent, other tenants, or any other person whomsoever, or involving imminent serious property damage.

6.  Violation of the above provisions shall be a material and irreparable violation of the Lease Agreement and good cause for termination of the tenancy. A single violation of any provision of the Crime Free Lease Addendum shall be deemed a serious violation and a material and irreparable noncompliance. It is understood that such single violation shall be good cause for immediate termination of the lease. Unless otherwise provided by law, proof of violation under this Addendum shall not require criminal conviction, but may be proved to exist by a mere preponderance of the evidence.

7.  In case of conflict between the provisions of this Addendum and any other provision of the Lease Agreement, the provisions of this Addendum shall govern.

8.  This Crime Free Lease Addendum is incorporated into the Lease Agreement executed by Owner/Agent and Resident(s) and any renewal thereof.

_____    _____    _____    _____
Resident                                                    Date              Owner/Agent                                            Date

*Jennifer Schultz*    *Mickell Rigsby*

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

**ADDENDUM REGARDING RECREATIONAL and MEDICAL MARIJUANA USE
and LANDLORD'S COMMITMENT TO ENFORCEMENT
OF CRIME FREE ADDENDUM**

**NAA**
NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____R-302_____, 16801 E Mission
   Parkway
   _____ (street address) in
   _____Spokane Valley_____
   (city), Washington, ___99216___ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: _January 4, 2021_
   Owner's name: _River House at the Trail Head_
   _____
   _____
   _____
   _____

   Residents (list all residents):
   _Jennifer Schultz_
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   This Addendum constitutes an Addendum to the above
   described Lease Contract for the above described premises,
   and is hereby incorporated into and made a part of such Lease
   Contract. Where the terms or conditions found in this
   Addendum vary or contradict any terms or conditions found
   in the Lease Contract, this Addendum shall control.

3. Washington State law permits the limited use of medical and
   recreational marijuana in specific and limited circumstances.
   However, this is not the case under federal law. Under federal
   law, specifically the Federal Controlled Substances Act (CSA),
   marijuana is still categorized as a Schedule I substance. This
   means that under federal law, and U.S. Supreme Court
   decisions, the manufacture, distribution, or possession of
   marijuana is strictly prohibited. Because the U.S. Department
   of Housing and Urban Development is controlled by the federal
   government, HUD policy is that the use of marijuana, whether
   prescribed for medical reasons or not, is a criminal offense
   and will not be protected under the fair housing laws or
   allowed in HUD funded housing. Therefore, apartment
   complexes are not required to accommodate the use of
   marijuana by a tenant who is a current medical marijuana
   user. Disabled tenants who are registered medical marijuana
   users, however, should not feel discouraged to request
   reasonable accommodations if the need arises.

4. The Premises listed above follows and complies with federal
   law regarding marijuana use and is, and will continue to be,
   a drug free community. Possession, use, manufacture or sale
   of any illegal substance, including marijuana, or any use of
   marijuana by the tenant and/or guests will result in immediate
   termination. If you have any questions or concerns about this
   policy, please speak to management.

5. By signing below, the resident acknowledges his or her
   understanding of the terms and conditions as stated above,
   and his or her agreement to comply with those terms and
   conditions.

6. **SPECIAL PROVISIONS.** The following special provisions
   control over conflicting provisions of this printed form:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**Resident or Residents** (sign here)          **Date of Signing Addendum**

_____          _____
_____          _____
_____          _____
_____          _____

**Owner or Owner's Representative** (signs here)     **Date of Signing Addendum**

_____          _____

_Jennifer Schultz    Mickell Rigsby_

© 2019, National Apartment Association, Inc. - 8/2019, Washington

## ADDENDUM PROHIBITING
## SHORT-TERM SUBLETTING OR RENTAL

**NAA**
NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.**
Unit No. ___R-302___ ___16801 E Mission___
Parkway _____
_____ (street address) in
_____ Spokane Valley _____
(city), Washington, _____ 99216 _____
(zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: __January 4, 2021__
Owner's name: __River House at the Trail Head__
_____
_____
_____
_____

Residents (list all residents):
__Jennifer Schultz_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

3. **SHORT TERM SUBLEASE OR RENTING PROHIBITED.** Without limiting the prohibition in the Lease on subletting, assignment, and licensing, and without limiting any of our rights or remedies, this Addendum to the Lease further supplements and defines the requirements and prohibitions contained in the Lease Contract between you and us. You are hereby strictly prohibited from subletting, and licensing, or renting to any third party, or allowing occupancy by any third party, of all or any portion of the dwelling, whether for an overnight use or duration of any length, without our prior written consent in each instance. This prohibition applies to overnight stays or any other stays arranged on Airbnb.com or other similar internet sites.

4. **PROHIBITION ON LISTING OR ADVERTISING DWELLING ON OVERNIGHT SUBLETTING OR RENTING WEBSITES.** You agree not to list or advertise the dwelling as being available for short term subletting or rental or occupancy by others on Airbnb.com or similar internet websites. You agree that listing or advertising the dwelling on Airbnb.com or similar internet websites shall be a violation of this Addendum and a breach of your Lease Contract.

5. **VIOLATION OF LEASE AGREEMENT.** Your Lease Contract allows for use of your dwelling as a private residence only and strictly prohibits conducting any kind of business in, from, or involving your dwelling unless expressly permitted by law. Separately, your Lease Contract prohibits subletting or occupancy by others of the dwelling for any period of time without our prior written consent. Permitting your dwelling to be used for any subletting or rental or occupancy by others (including, without limitation, for a short term), regardless of the value of consideration received or if no consideration is received, is a violation and breach of this Addendum and your Lease Contract.

6. **REMEDY FOR VIOLATION.** Any violation of this Addendum constitutes a material violation of the Lease Contract, and as such we may exercise any default remedies permitted in the Lease Contract, including termination of your tenancy, in accordance with local law. This clause shall not be interpreted to restrict our rights to terminate your tenancy for any lawful reason, or by any lawful method.

7. **RESIDENT LIABILITY.** You are responsible for and shall be held liable for any and all losses, damages, and/or fines that we incur as a result of your violations of the terms of this Addendum or the Lease Contract. Further, you agree you are responsible for and shall be held liable for any and all actions of any person(s) who occupy your dwelling in violation of the terms of this Addendum or the Lease Contract, including, but not limited to, property damage, disturbance of other residents, and violence or attempted violence to another person. In accordance with applicable law, without limiting your liability you agree we shall have the right to collect against any renter's or liability insurance policy maintained by you for any losses or damages that we incur as the result of any violation of the terms of this Addendum.

8. **SEVERABILITY.** If any provision of this Addendum or the Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

9. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Resident or Residents**
(All residents must sign)

_____
_____
_____

**Owner or Owner's Representative**
(Signs below)

_____

**Date of Signing Addendum**

_____

JS000222
© 2018, National Apartment Association, Inc. - 9/2018, Washington

## SHORT-TERM LEASE ADDENDUM

**1. DWELLING UNIT DESCRIPTION.**
Unit No. ____R-302____, __16801 E Mission Parkway__
_____ _(street address)_ in
_____ __Spokane Valley__
_(city)_, Washington, ___99216___ _(zip code)._

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: __January 4, 2021__
Owner's name: __River House at the Trail Head__
_____
_____
_____
_____

Residents _(list all residents)_:
__Jennifer Schultz__
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

**3. PURPOSE OF ADDENDUM.** We recognize that you have special circumstances that require a short-term Lease Contract. By entering this Addendum with you, we have agreed to modify the terms of your Lease Contract to allow more flexibility in your lease term and move-out notice.

**4. LEASE CONTRACT TERMS.** The language of the Lease Terms paragraph of the Lease Contract is deleted in its entirety and replaced by the language in this Addendum:

The initial term of the Lease Contract begins on the ___4th___ day of _____January_____, __2021__ _(year)_, and ends at midnight on the ___3rd___ day of _____March_____, __2022__ _(year)._

The Lease Contract, as amended by this Addendum, does not automatically renew. The Lease Contract will terminate on the date indicated above, unless you provide us with a written request to renew or extend the Lease Contract term and we give you written or electronic approval of your request.

**5. WAIVER AND MODIFICATION OF MOVE-OUT NOTICE.** The language of the Move-Out Notice paragraph of the Lease Contract is deleted in its entirety and replaced by the language in this Addendum:

We agree to waive the move-out notice required to be given by you prior to the end of the Lease Contract term. As a courtesy, we request that you provide us with a written notice of your move-out date.

Moving out prior to the end of the Lease Contract term will not release you from liability for the full term of the Lease Contract, any renewal term(s), and/or lease extensions. You will still be liable for the entire Lease Contract term if you move out early (Early Move-Out paragraph), except as otherwise expressly set forth in the Lease Contract.

**6. SHOWING THE UNIT.** We may begin showing your unit to prospective residents 30 days before your Lease Contract term ends, per the When We May Enter paragraph of the Lease Contract.

**7. OTHER RIGHTS UNCHANGED.** Except as otherwise expressly set forth in this Addendum, all other contractual rights and obligations of both you and us under the Lease Contract remain unchanged.

**8. OBLIGATION TO VACATE.** You have an obligation to vacate the dwelling at the end of the Lease Contract term. Please contact us if moving out by the end of the Lease Contract term becomes a problem for you. You may be able to extend your Lease Contract term if we have not already relet the dwelling to others. We and any successor residents who may be leasing your unit will be relying on your moving out per the Lease Contract termination date. Therefore, you may not hold over beyond such a date without our written or electronic consent— even if it means you have to make plans for temporary lodging elsewhere. **You will be subject to the terms and conditions of the Default by Resident paragraph of the Lease Contract should you hold over.**

**9. SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this form:
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**10. SEVERABILITY.** If any provision of this Addendum or Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Addendum while preserving the intent of the parties.

**Resident or Residents**
_(All residents must sign)_

_____
_____
_____
_Jennifer Schultz_  _Michell Regsberg_
_____

**Owner or Owner's Representative**
_(Signs below)_

_____

**Date of Signing Addendum**

_____

© 2018, National Apartment Association, Inc. - 9/2018, Washington


# REASONABLE MODIFICATIONS AND ACCOMMODATIONS POLICY

**NAA**
NATIONAL APARTMENT ASSOCIATION

**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____R-302_____ , _16801 E Mission_
_Parkway_
_____ *(street address)* in
_____Spokane Valley_____
*(city)*, Washington, __99216__ *(zip code)*.

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract date: _January 4, 2021_
Owner's name: _River House at the Trail Head_
_____
_____
_____
_____

Residents *(list all residents)*:
_Jennifer Schultz_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**3. EQUAL HOUSING OPPORTUNITY POLICY.** We provide rental housing on an equal opportunity basis. Consistent with this policy, we welcome persons with disabilities to our community and will not discriminate against any person because of his or her disability, or his or her association with anyone with a disability. In addition, we know that it may sometimes be necessary for persons with disabilities to be able to make modifications to their surroundings or to have accommodations made in our practices or procedures to enable them to fully enjoy and use their housing, and we have created the policy described herein to meet that need.

**4. PURPOSE OF POLICY.** A resident or applicant may be entitled under state and federal fair housing laws to a reasonable accommodation and/or reasonable modification when needed because of a disability of the resident, the applicant, and/or a person associated with a resident or applicant, such as a member of the household or frequent guest. The reasonable accommodation and/or reasonable modification must be necessary for the individual with the disability to have an equal opportunity to fully use and/or enjoy housing services offered to other residents and/or the individual dwelling unit. We will grant requests for accommodations or modifications that are reasonable and necessary because of a disability, would not impose an undue financial or administrative burden on our operations, and do not fundamentally alter the nature of services or resources we provide as part of our housing program.

**5. DEFINITIONS.**
   **A. Disability.** The Federal Fair Housing Act defines a person with a disability to include: (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; or (3) individuals with a record of such an impairment.

   **B. Reasonable Modifications.** A reasonable modification is a structural change made to existing premises, occupied or to be occupied, by a person with a disability, in order to afford such person full enjoyment of the premises. These are typically structural changes to interiors and exteriors of dwellings and to common and public use areas, which are necessary to accommodate a person with a disability. Depending on the nature of the request, and the type of federal funding associated with the tenancy, reasonable modifications are typically granted at the expense of the person requesting them.

   **C. Reasonable Accommodation.** A reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common areas.

**6. REQUESTS FOR REASONABLE MODIFICATIONS.**
   **A. Generally.** If you are a resident or an applicant (i) with a disability, or (ii) with someone associated with you who has a disability, you have the right to request a reasonable modification to your dwelling or the common areas, in accordance with fair housing laws, if such modifications may be necessary to allow you to have an equal opportunity to fully use and/or enjoy your dwelling.

   **B. Reasonable Modification Expenses.** Expenses for reasonable modifications, and restoration expenses, if applicable, of such modifications, shall be allocated in accordance with state and federal fair housing laws.

   **C. Permission Required, Evaluation of Disability.** If you would like to request a reasonable modification to your dwelling or the common areas of the community that is necessary because of a disability, you must first obtain permission from us. We prefer that you use the attached "Reasonable Accommodation and/or Modification to Rental Unit" form, but you are not required to use this form. If you would like or need assistance in completing this form, please let us know, and we will be glad to provide assistance. Whether you use our form or your own form of request, we will need to know what specific modification is being sought. In addition, if the disability or the disability-related need for the modification is not obvious, we may ask for information that is necessary to evaluate the disability-related need for the modification; however, we will only request information necessary to evaluate your request, and all information will be kept confidential.

   **D. Reasonable Assurances.** Depending on the modification requested, we may require you to provide reasonable assurances that the modification will be done in a workmanlike manner and that any required building permits will be obtained. In some cases, any third-party retained to perform the modification may also have to be approved in writing by us, and be properly licensed and insured. During and upon completion of the modification, we may inspect the work in connection with our overall property management responsibilities. We will not increase your security deposit as a result of a modification request. However, when applicable, if you fail to restore the interior of the dwelling to its original condition, excluding normal wear and tear, at the end of the tenancy, we may assess the cost of restoration against your security deposit and/or final account upon move-out.

   **E. Restoration Reimbursement.** At the end of your tenancy, you may be responsible to restore the interior of your dwelling to its pre-modification condition at your expense, depending on the nature of the modification. Again, depending on the modification, we may request that you deposit sufficient funds for that restoration in an interest bearing escrow account to ensure any required restoration can be completed. Regardless of modification, you will remain responsible to pay for damage to your dwelling in excess of ordinary wear and tear.

   **F. Alternative Modification.** Depending on the circumstances, we may not be able to grant the exact modification you have requested and we may ask to discuss other alternatives with you.

*Jennifer Schultz* [signature]

JS000224

**7. REQUESTS FOR REASONABLE ACCOMMODATIONS.**

    **A. Generally.** We will make reasonable accommodations in our rules, policies, practices, and/or services, to the extent that such accommodations may be reasonably necessary to give you, as a disabled person, an equal opportunity to fully use and enjoy your dwelling, and the public and common areas of the premises, and as otherwise required by law.

    **B. Request for Accommodation, Evaluation of Disability.** If you would like a reasonable accommodation that is necessary because of a disability, please submit a request to us, preferably using the attached "Reasonable Accommodation and/or Modification to Rental Unit" form, but you are not required to use this form. If you would like or need assistance completing this form please let us know and we will be glad to provide assistance. Whether you use our form or your own form of request, we will need to know what accommodation is being sought. In addition, if the disability is not obvious, we may ask for information that is reasonably necessary to evaluate the disability-related need for the accommodation. We will only request information that is reasonably necessary for us to evaluate your request, and we will keep all information you provide confidential.

    **C. Alternative Accommodation.** Depending on the circumstances, we may not be able to grant the exact accommodation you have requested and we may ask to discuss other alternatives with you.

**OWNER RESPONSIBILITY.** We will respond to all requests for a reasonable accommodation and/or modification in a timely manner. If we deny your request for a reasonable modification and/or accommodation, we will explain the reason for our denial and we will discuss with you whether there are alternative accommodations and/or modifications that we could provide that would meet your needs. We also are committed to entering into an interactive dialogue with you in relation to any request, and therefore agree to speak with you in relation to any request so that you have sufficient opportunity to provide us with any information you believe is relevant to our evaluation of your request for the modification(s) and/or accommodation(s).

**9. AMENDMENT TO POLICY.** This policy may be amended and updated at any time upon written notice to you. In addition, in the event of any conflict between this policy and/or state, local or federal law, the provisions of such law shall control.

If you have any questions about this policy, you should contact:

_____

by writing or calling:

_____

_____

_____

_____


**Resident or Residents**
*(All resident's must sign)*

_____

_____

_____

_____

_____


**Owner or Owner's Representative**
*(Signs below)*

_____

**Date of Signing**

_____

*Jennifer Schultz    Mickell Rigsby*

©2020 National Apartment Association, Inc. - 4/2020, Washington

**SERVICE MEMBER'S PARTIAL WAIVER OF PROTECTIONS
UNDER THE SERVICEMEMBER'S CIVIL RELIEF ACT (SCRA)**



**1. DWELLING UNIT DESCRIPTION.**
Unit No. _____ R-302 _____ 16801 E Mission Parkway _____
_____ (street address) in _____ Spokane Valley _____ (city),
Washington, _____ 99216 _____ (zip code).

**2. LEASE CONTRACT DESCRIPTION.**
Lease Contract Date: January 4, 2021
Owner's name: River House at the Trail Head
_____
_____

Residents (list all residents):

Jennifer Schultz
_____
_____
_____
_____
_____

By his/her signature below, the Servicemember hereby waives his/her protections under 50 U.S.C. 3958, to the extent set out below:

Anytime the Servicemember vacates the unit, he/she hereby consents to the Landlord's right to dispose of any remaining personal property without a court order after storing that personal property for not less than the time period required by RCW 59.18.310, and to allowance of the Landlord to charge reasonable charges for that disposal, as allowed by RCW 59.18.

The Servicemember specifically authorizes the Landlord to immediately dispose of, without any storage requirement, any items that is reasonably interpreted by the Landlord as garbage.

**Resident or Residents**
*(All residents must sign)*

_____

_____

_____

_____

_____

**Owner or Owner's Representative**
*(Signs below)*

_____

**Date of Signing Addendum**

_____

*Jennifer Schultz    Mickell Rigsby*

© 2019, National Apartment Association, Inc. - 9/2019, Washington



River House at the Trailhead



# CONSTRUCTION ADDENDUM

This Construction Addendum (this "Addendum") is made and entered into as of this __4th__ day of ___January___, __2021__ by and between __Jennifer Schultz__ _____ ("Resident", whether one or more) and __River House at the Trail Head__ _____ Apartments (the "Owner") upon the terms and conditions stated herein. The purpose of this Addendum is to supplement the Apartment Lease Agreement (the "Lease") executed by Resident and express the parties' agreement with respect to ongoing construction activity at the Apartments.

For and in consideration of the mutual promises contained herein and in the Lease, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Ongoing Construction Activity.** Resident acknowledges that Resident has leased Resident's Unit knowing that there is ongoing construction activity in and around the Unit and the apartment community. In the event that Resident occupies the Unit during such construction activity, Resident will comply with all rules and regulations of Owner with respect to avoiding hazardous areas and acknowledges Owner's right to restrict Resident's use of certain amenities or common areas due to the ongoing construction activity.

2. **Delay of Occupancy**. In the event that occupancy is or will be delayed, Owner will provide you with a notice of such delay and rent will be abated for the period of delay, as specified in the Owner's notice. If the Owner's notice indicates that your occupancy will be delayed due to ongoing construction activity for a period exceeding 10-days, you will have the right to terminate the Lease by giving Owner written notice of termination within 3-days after receipt of Owner's notice of delay. In the event you do not terminate the Lease pursuant to this provision as a result of construction delay, you will be expected to occupy the Unit when the Unit is ready for occupancy, as determined by Owner.

3. **Release.** Resident hereby releases, indemnifies and holds harmless Owner, ___River House at the Trailhead___ and their respective agents, employees, officers, directors, partners, successors and assigns (collectively referred to as the "Released Parties") from and against any and all costs, expenses (including attorneys' fees), claims, rights and causes of action including, but not limited to, such costs, expenses, claims, rights and causes of action relating to any personal, bodily or property damage or injury relating to, arising out of or connected with construction at the Apartments. Resident expressly acknowledges and agrees that Resident is renting the Unit with full knowledge of such construction activity and that the construction activity shall not constitute any default or breach by Owner of the Lease or of Resident's right to use the Unit, any amenities or common areas of the Apartments nor shall such construction activity entitle Resident to any concessions including termination of the Lease or recovery of damages from Owner or any other Released Parties.

EXECUTED as of the Effective Date.

_____
Resident Signature/Date

_____
Resident Signature/Date

_____
Resident Signature/Date

_____
Resident Signature/Date

_Jennifer Schultz_    _Mickell Rigsby_

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

## CLASS ACTION WAIVER ADDENDUM

**NAA**
NATIONAL APARTMENT ASSOCIATION

1. **DWELLING UNIT DESCRIPTION.**
   Unit No. _____ R-302 _____ 16801 E Mission Parkway
   _____ _(street address)_ in
   _____ Spokane Valley _____
   _(city)_, Washington, ____ 99216 ____ _(zip code)._

2. **LEASE CONTRACT DESCRIPTION.**
   Lease Contract Date: __January 4, 2021__
   Owner's name: __River House at the Trail Head__
   _____
   _____
   _____
   _____

   Residents _(list all residents)_:
   __Jennifer Schultz__
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

3. **ADDENDUM.** This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

4. **CLASS ACTION WAIVER.** You agree that you hereby waive your ability to participate either as a class representative or member of any class action claim(s) against us or our agents. While you are not waiving any right(s) to pursue claims against us related to your tenancy, you hereby agree to file any claim(s) against us in your individual capacity, and you may not be a class action plaintiff, class representative, or member in any purported class action lawsuit ("Class Action"). Accordingly, **you expressly waive any right and/or ability to bring, represent, join, or otherwise maintain a Class Action or similar proceeding against us or our agents in any forum.**

Any claim that all or any part of this Class Action waiver provision is unenforceable, unconscionable, void, or voidable shall be determined solely by a court of competent jurisdiction.

**YOU UNDERSTAND THAT, WITHOUT THIS WAIVER, YOU MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION LAWSUIT. BY SIGNING THIS AGREEMENT, YOU UNDERSTAND AND CHOOSE TO WAIVE SUCH ABILITY AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE CONTRACT.**

5. **SEVERABILITY.** If any clause or provision of this Addendum is illegal, invalid or unenforceable under any present or future laws, then it is the intention of the parties hereto that the remainder of this Addendum shall not be affected thereby.

6. **SPECIAL PROVISIONS.** The following special provisions control over conflicting provisions of this printed form:
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

Resident's Acknowledgment                    Date of Signing Addendum
_____                _____
_____                _____
_____                _____
_____                _____

Landlord (or Landlord Agent) Acknowledgment    Date of Signing Addendum
_____                _____

_Jennifer Schultz    Michell Rapley_

© 2018, National Apartment Association, Inc. - 9/2018, Washington

## STANDARD CLEANING AND REPAIR CHARGES

The following information is provided to assist you in your move-out and assist in assessing any charges that may be applicable. A full inspection of the apartment will be made only after you have moved out. If the move-out occurs during regular business hours, a property representative should be scheduled to walk the apartment with you. If the apartment is in need of cleaning or repair, the following estimated charges will be used as a guide to assess amounts to be deducted from your Security Deposit and charged to you, if the amount assessed exceeds your security deposit. Please note that this is not a complete list of all possible estimated charges that you may incur when your apartment is inspected. **Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the costs or charges we incur**. Please leave a forwarding address on file with the office.

| KITCHEN CLEANING | |
|---|---|
| Oven | $15.00 - $50.00 |
| Stove and Vent-a-Hood | $10.00 - $15.00 |
| Refrigerator/ Freezer | $10.00 - $50.00 |
| Dishwasher/ Microwave | $10.00 - $25.00 |
| Cabinets and Countertops | $10.00 - $20.00 |
| Floors | $15.00 - $50.00 |
| **BATHROOM CLEANING** | |
| Toilet | $10.00 - $20.00 |
| Tub/ Shower | $10.00 - $60.00 |
| Sinks/ Counters/ Mirrors | $10.00 - $20.00 |
| **MISCELLANEOUS** | |
| Blinds (Windows/ Patio) | $15.00 to estimate |
| Carpet Repairs | Based on actual cost including labor and installation |
| Washer/ Dryer Cleaning | $15.00 to $30.00 |
| Tile Floor Repair or Waxing/ Cleaning | $15.00 to estimate |
| Sheetrock Repairs | $10.00 to estimate |
| Window Cleaning – Window | $10.00 each |
| Window Cleaning – Sliding Glass Doors | $15.00 each |
| Graffiti Removal | $5.00 per letter to estimate |
| Carpet Cleaning/ Stain Removal per vendor | $45.00 to estimate |
| Standard Trash Removal | $20.00 per bag |
| HVAC Smoke Damage/ Duct Cleaning/ Ozone Treatments | **$250.00 - $650.00** |

## REMOVING PROPERTY

| Cost of removing property (such as furniture pieces), including storage | $25.00 – $100.00 each piece |
|---|---|

## REPLACEMENT CHARGES

If any items are missing/ damaged to the point that they must be replaced when you move out, you will be charged for the current cost of the item in addition to possible labor services. A list of various replacement charges has been provided below. Please note that this is not a complete list of possible charges that you may incur when your apartment is inspected, and additional labor cost may be considered. Please also note that these charges are estimates only to give you an idea of the charges you may incur for particular items. You may be charged more than the maximum, depending upon the cost or charges we incur.



Jennifer Schultz    Mickell Rigsby

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| | |
|---|---|
| Window Glass | Estimate |
| Patio Door Glass | Estimate |
| Window Screens | $10.00 - $35.00 |
| Patio Screen Doors | $80.00 - $90.00 |
| Mail Box Keys/ New Lock | $10.00 per key / $45.00 per lock |
| Keys Not Returned/ New Lock | $25.00 - $85.00 |
| Ice Maker Tray | $10.00 each |
| Refrigerator Shelves/ Racks | $35.00 - $60.00 |
| Microwave Glass Tray | $25.00 - $60.00 |
| Disposal Damage | $65.00 - $80.00 |
| Dishwasher Rack | $50.00 - $150.00 |
| Dishwasher Silverware Basket | $35.00 - $85.00 |
| Blinds Replaced | $12.00 - $75.00 |
| Interior Door/ Door Jam | $50.00 - $150.00 |
| Door Hardware/ Knobs/ Latches | $20.00 - $40.00 |
| Fire Extinguisher | $25.00 - $60.00 |
| Mirrors/ Medicine Cabinets | $40.00 - $200.00 |
| Shower Rods/ Towel Bars | $15.00 - $150.00 |
| Ceiling Fans (if original is not available in apartment) | $50.00 - $175.00 |
| Light Fixtures (if original is not available in apartment) | $15.00 - $175.00 |
| Faucets/ Bath/ Tub | $15.00 - $50.00 |
| Toilet Tanks/ Lids | $30.00 - $60.00 |
| Toilet Seats | $15.00 - $20.00 |
| Parking Tag | $20.00 each |
| Counter Top Repairs | $50.00 - $200.00 |
| Drip Pan | $5.00 each |
| Broiler Pans | $25.00 - $50.00 |
| Oven Racks | $20.00 - $60.00 |
| Smoke Detectors | $25.00 - $75.00 |
| Gate Cards | $10.00 each |
| Gate Remotes/ Key Fobs | $25.00 - $75.00 each |
| Cabinet Repairs | Based on labor and cost of repair |
| Wall Damage/ Sheet Rock Repair | Based on labor and cost of repair |
| Full Painting | Based on labor and cost of paint |
| Pest Extermination; bedbugs/ fleas | Based on labor and cost of pest extermination |
| Carpet Replacement/ Pet Urine/ Floor Sealing | Based on actual cost including labor and installation |

Blinds, carpet, vinyl, appliance, replacements will be based on actual cost including labor and installation.

| Carpet Wear & Tear is taken into consideration based upon the following ratio: | |
|---|---|
| 5 years old: 20% of cost | 2 years old: 80% of cost |
| 4 years old: 40% of cost | 1 year old or less: 100% of cost |
| 3 years old: 60% of cost | |

I have reviewed the Charge Rate Sheet and understand the potential costs associated with the turnover of my apartment if cleaning, repairs or replacements are necessary at the time of move-out. The above price list will be used in determining the standard costs to bring the apartment back to its original condition, with exception of wear and tear.

_Resident_                              _Date_

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

The following information states that the identified document has been signed electronically by the parties detailed below:

| Signee Details | Role | Signature | Initials | Date Signed |
|---|---|---|---|---|
| Jennifer Schultz<br>Email ID: myadventureinlife@gmail.com | Resident | *Jennifer Schultz* | *JS* | 01/04/2021 |
| Mickell Rigsby<br>Email ID: MRigsby@avenue5.com | Manager | *Mickell Rigsby* | *MR* | 01/04/2021 |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

## Document Information

Document Reference Number: 1118716

| Document Pages: 70 | Signatures: 138<br>Initials: 2 | Status: Completed |
|---|---|---|

| Signature Summary | Signature | Initials | Timestamp | Signing Status |
|---|---|---|---|---|
| Jennifer Schultz | *Jennifer Schultz* | *JS* | 01/04/2021 06:24:55 PM CST | Completed |
| Document Started:<br>Email Address: | 01/04/2021 06:21:59 PM CST<br>myadventureinlife@gmail.com | | | |
| Mickell Rigsby | *Mickell Rigsby* | *MR* | 01/04/2021 06:26:32 PM CST | Completed |
| Document Started:<br>Email Address: | 01/04/2021 06:21:55 PM CST<br>MRigsby@avenue5.com | | | |

| Signature Details | Page | Signature/Initials | Signing Status | Tracking Details |
|---|---|---|---|---|
| Jennifer Schultz | 1 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:10 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 2 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:12 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 3 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:15 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 4 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:18 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 5 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:20 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 6 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:22 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 7 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:24 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 8 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:27 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 9 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:29 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 10 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:31 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 11 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:33 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 12 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:36 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 13 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:38 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 14 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:40 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 15 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:42 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document Agent...Chrome...

| Jennifer Schultz | 16 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:44 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 17 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:46 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 18 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:48 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 19 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:51 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 20 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:53 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 21 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:56 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 22 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:22:58 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 23 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:00 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 24 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:01 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 25 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:05 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 26 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:09 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 27 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:11 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 28 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:13 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 29 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:16 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 30 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:18 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 31 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:20 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 32 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:23 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 33 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:26 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 34 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:29 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 35 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:31 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| Jennifer Schultz | 36 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:33 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 37 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:36 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 38 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:39 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 39 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:41 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 40 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:43 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 41 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:47 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 42 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:49 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 43 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:51 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 44 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:54 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 45 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:56 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 46 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:23:58 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 47 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:01 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 48 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:03 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 49 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:06 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 50 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:08 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 51 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:10 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 52 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:12 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 53 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:15 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 54 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:17 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 55 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:18 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| Jennifer Schultz | 56 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:21 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 57 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:25 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 58 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:27 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 59 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:29 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 60 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:32 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 61 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:35 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 62 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:37 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 63 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:39 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 64 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:41 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 65 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:43 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 66 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:45 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 67 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:46 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 68 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:48 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 70 | *JS* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:52 PM CST<br>User Agent: Chrome on Windows |
| Jennifer Schultz | 70 | *Jennifer Schultz* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:24:51 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 1 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:35 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 2 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:39 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 3 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:41 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 4 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:43 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 5 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:45 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| | | | | |
|---|---|---|---|---|
| Mickell Rigsby | 6 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:47 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 7 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:51 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 8 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:54 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 9 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:56 PM CST<br>User Agent: Chrome on Windows |
| **Mickell Rigsby** | 10 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:57 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 11 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:26:59 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 12 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:01 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 13 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:03 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 14 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:05 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 15 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:11 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 16 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:15 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 17 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:16 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 18 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:20 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 19 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:22 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 20 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:24 PM CST<br>User Agent: Chrome on Windows |
| **Mickell Rigsby** | 21 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:30 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 22 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:37 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 23 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:40 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 24 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:42 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 25 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:45 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| Mickell Rigsby | 26 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:48 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 27 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:50 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 28 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:52 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 29 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:54 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 30 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:56 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 31 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:58 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 32 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:27:59 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 33 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:01 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 34 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:03 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 35 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:04 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 36 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:05 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 37 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:08 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 38 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:11 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 39 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:13 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 40 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:15 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 41 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:17 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 42 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:19 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 43 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:21 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 44 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:23 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 45 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:24 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| Mickell Rigsby | 46 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:26 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 47 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:28 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 48 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:29 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 49 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:31 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 50 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:33 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 51 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:34 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 52 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:37 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 53 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:38 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 54 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:40 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 55 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:42 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 56 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:44 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 57 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:46 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 58 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:47 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 59 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:49 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 60 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:51 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 61 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:53 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 62 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:55 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 63 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:57 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 64 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:28:59 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 65 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:01 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716

| Mickell Rigsby | 66 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:03 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 67 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:04 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 68 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:06 PM CST<br>User Agent: Chrome on Windows |
| Mickell Rigsby | 70 | *MR* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:08 PM CST<br>User Agent: Chrome on Windows |
| **Mickell Rigsby** | 70 | *Mickell Rigsby* | Completed | IP Address: 73.11.138.169<br>Timestamp: 01/04/2021 06:29:08 PM CST<br>User Agent: Chrome on Windows |

This document is digitally signed using RENTCafe eSignature services. Document ID: 1118716